**ABC FREIGHT FORWARDING COR-PORATION, Plaintiff,**

**v.**

**UNITED STATES of America and Inter-state Commerce Commission, Defendants.**

United States District Court
S. D. New York.

Nov. 17, 1954.

Nathaniel T. Helman, New York City, for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., J. Edward Lumbard, U. S. Atty., James E. Kilday, E. Riggs McConnell, Sp. Assts. to Atty. Gen., of counsel, for United States of America.

Edward M. Reidy, General Counsel, Washington, D. C., Leo H. Pou, Asst. Gen. Counsel, Washington, D. C., of counsel, for Interstate Commerce Commission.

Before CLARK, Chief Judge, and MURPHY and DAWSON, District Judges.

DAWSON, District Judge.

On November 20, 1951, an application of ABC Freight Forwarding Corporation to the Interstate Commerce Commission for a permit to allow it to extend its services into new geographical areas, including Florida, was granted, but the effective date of the permit was January 12, 1952. 285 I.C.C. 91. Before the effective date of the permit, protestants asked the Commission to reconsider the application because of allegedly illegal activities of the applicant. The Interstate Commerce Commission agreed to reopen the proceedings, postponed the effective date of the permit, and, after new hearings, reversed its prior decision and, on April 21, 1953, denied the application for a permit. 285 I.C.C. 276. The ABC Corporation unsuccessfully petitioned the entire Commission for reconsideration and/or further hearings. In this action it seeks a reversal of the denial of its permit.

The Interstate Commerce Commission's authority over freight forwarding permits is defined in § 410 of the Interstate Commerce Act, 49 U.S.C.A. § 1010. Such permits are to be issued "if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and that the proposed service, to the extent authorized by the permit, is or will be consistent with the public interest and the national transportation policy declared in the Interstate Commerce Act; otherwise such application shall be denied."

The Commission based its denial of the permit on findings that plaintiff aided and abetted the formation, in January, 1952, of the Florida Shippers Association; that the activities of Florida Shippers Association were freight-forwarder operations, as distinguished from operations of a shipper's association (which would be exempt from the provisions of the Act regulating freight-forwarders; see Sec. 1002(c), Tit. 49 U.S.C.A.); that the operations of Florida Shippers Association had been conducted deliberately and without authority; that plaintiff aided and abetted the unlawful operations of Florida Shippers Association; and that by reason of such facts, plaintiff had failed to establish that it was a qualified applicant or that its proposed extension of service would be consistent with the public interest and the national transportation policy.

■ In a long line of cases, beginning with Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308, the Supreme

Court has laid down the rule that the courts must sustain an order of the Interstate Commerce Commission if it is based upon substantial evidence and is not arbitrary nor erroneous as a matter of law. See Lang Transportation Corp. v. United States, D.C.S.D.Cal.1948, 75 F.Supp. 915, 926. It is against this well established principle of law that we must consider the contentions of the plaintiff.

Plaintiff seeks to review and set aside the order of the Commission on two principal grounds:

(1) That the evidence before the Commission was not sufficient to establish that the Florida Shippers Association was the "alter ego" of plaintiff so as to attribute to plaintiff the responsibility for any unlawful conduct of that Association; and

(2) That the Commission erred in finding from the facts that the plaintiff was not a qualified applicant and that the proposed service would not be consistent with the public interest and the national transportation policy.

■ The only question for this Court on the first point is whether, on the entire record, there was substantial evidence which would justify the findings of the Commission. Although we might differ as to the effect to be given to the evidence, we cannot conclude that the Commission is mistaken in its findings if there was substantial evidence in the entire record from which the Commission reasonably could have reached those findings. Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Baltimore Transfer Co. v. Interstate Commerce Commission, D.C., 114 F.Supp. 558, affirmed 346 U.S. 890, 74 S.Ct. 225, rehearing denied 347 U.S. 908, 74 S.Ct. 426.

■ There was sufficient evidence from which the Commission reasonably could have reached its findings as to the illegal activities of Florida Shippers Association and its findings that the plaintiff had aided and abetted in the formation of this Association and its unlawful operations. There was sufficient evidence to justify the Commission in concluding that Florida Shippers Association was de facto, if not de jure, a creature of plaintiff.

This leads to the important question as to whether the Commission could, within its lawful authority, conclude from these facts that plaintiff was not a qualified applicant and that extension of the freight-forwarding business of the plaintiff, under such circumstances, would not be consistent with the public interest and the national transportation policy. Put another way, this question is:

Does the fact that an applicant for a permit for extension of services has participated, through concealment, in illegal activities relating to the object for which the permit is sought, make the applicant unqualified to extend his services, or make an extension of services by such applicant contrary to public interest and the national transportation policy?

A court might reach a different conclusion on this point than a commission; a court conceivably might conclude that proof of previous illegal conduct by an applicant would not be sufficient for it to conclude that the applicant was unqualified or that an extension of its services would be contrary to the public interest.

■ But that issue is not before this Court. We are not here at liberty to consider what this Court might decide if it were trying the case de novo. The issue for the Court is whether the action of the Commission is arbitrary or capricious. As the Supreme Court said in Federal Communications Commission v. WOKO, Inc., 329 U.S. 223, at page 229, 67 S.Ct. 213, at page 216, 91 L.Ed. 204:

"But it is the Commission, not the courts, which must be satisfied that the public interest will · be served by renewing the license. And the fact that we might not have made the same determination on the same facts does not warrant a substitution of judicial for administrative discretion since Congress has confided the problem to the latter."

In that case, a corporation which had operated a radio station for some years and had appeared to have rendered public service of acceptable quality and to be able to continue to do so, was denied a renewal of its license by the Federal Communications Commission on the ground that it could not be entrusted with the responsibilities of a license, because the Commission found that it had misrepresented the true ownership of its capital stock in applications and testimony before the Commission over a period of years The court held that the denial of the license was not arbitrary or capricious even though the Commission failed to find that the concealment was of material facts or had influenced the Commission in making any decision or that it would have acted differently had it known the true facts, or that it marked a departure from the course which the Commission had taken in dealing with misstatements and applications in other cases. See also United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821.

The Commission is better equipped than a court to reach a determination on the issues which have been entrusted to it. The Commission is charged with the determination as to whether granting the application would be consistent with the "national transportation policy". Part of that policy as enunciated by Congress is "to provide for fair and impartial regulation of all modes of transportation". It may well be that it would not be consistent with this policy to reward an applicant who has flouted the regulatory authority by extending its activities, illegally and through subterfuge, into an area for which no authority had yet been obtained. So, too, the Commission in its administrative capacity may take notice of its previous opinion in which the same applicant had been reprimanded for extending its services at a time when no permit had been obtained for such extension. Arthur J. Brown Freight Forwarder Application—Extension of Operations, 265 I.C.C. 41 (1946).

■ It cannot be concluded that the Commission was arbitrary or capricious in reaching its determination. Judgment should be granted for the defendants.

CLARK, Chief Judge, concurs.

MURPHY, District Judge (dissenting).

A reviewing court cannot substitute its own judgment for that of an administrative agency. But it should not accept a determination merely because made by such agency. The statutory scope of judicial review of administrative action is not at all confined to such action found to be "arbitrary, capricious, an abuse of discretion, * * *." [1] Such scope includes the higher hurdle that administrative action must surmount, *viz.*, whether or not it is "unsupported by substantial evidence." [2] And " 'substantial evidence is more than a mere scintilla * * *' it 'must do more than create a suspicion of the existence of the fact to be established.' " [3]

---

1. Administrative Procedure Act, 60 Stat. 237, 5 U.S.C.A. § 1009(e) (B) (1).

2. Id. § 1009(e) (B) (5).

3. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456. See Dickinson, Administrative Procedure Act: Scope and Grounds of Broadened Review, 33 A.B.A.J. 434, 516 (1947).

Apparently upon the sole ground that the freight forwarding activities of Florida Shippers Association were carried on without a required permit by the Interstate Commerce Commission and that this Association was the alter ego of plaintiff ABC Freight Forwarding Corporation, the Commission vacated a prior order granting the ABC extension of its permit as freight forwarder to include six additional states (Florida being one of these).[4] The order granting the permit was made on November 20, 1951, and found that ABC met every statutory requirement.[5] In effect the Commission revoked the permit by its subsequent order of April 21, 1953. Careful compliance with that part of the Interstate Commerce Act added in 1942 dealing with freight forwarders explicitly requires "That no such permit shall be revoked (except upon application of the holder) unless the holder thereof fails to comply, within a reasonable time, not less than thirty days, to be fixed by the Commission, with a lawful order of the Commission, commanding obedience to the provision of this chapter, or to the rule or regulation of the Commission thereunder, or to the term, condition, or limitation of such permit, found by the Commission to have been violated by such holder * * *." [6]

Under provisions of the Act, enacted earlier than the part dealing with freight forwarders, and concerned generally with Commission procedure, no such preliminary warning is necessary. If, as in the instant case, the "order * * * has not yet become effective, the * * * order * * *. shall be stayed or postponed pending disposition of the matter by the Commission * * *," upon the application for reconsideration of an order.[7] Whether or not in the case of a freight forwarding permit granted but not yet effective, preliminary warning is prerequisite to revocation or suspension may be a question of "excess of statutory jurisdiction, authority, or limitations, or short of statutory right" within the scope of review of this court.[8] More in point, however, is the question whether the Commission's order of vacation can be found to be "unsupported by substantial evidence."

There is of course no legislative prescription, as there could have been, that a single violation of an order of the Commission makes a freight forwarder ineligible for a permit either as a matter of law or in the discretion of the Commission. Quoting from a recent decision,[9] defendant urges a twofold legislative standard in this language: "The two statutory findings which the Commission must make before it may grant a permit to a freight forwarder are that the forwarder is 'ready, able, and willing properly to perform the service proposed' and that the application 'is or will be consistent with the public interest and the national transportation policy'. * * *" "Both," defendant argues, "of these positive findings are necessary to support an order granting a permit." Both of these findings with respect to ABC were explicitly made by the Commission to support its initial order granting the permit. In connection with its second order vacating the first one, a positive finding was made that ABC was "ready, able and willing to perform the proposed service" (without using the word "properly" before "perform"), and a negative one was

4. ABC Freight Forwarding Corporation Extension, 285 I.C.C. 276.

5. Id., 285 I.C.C. 91.

6. Interstate Commerce Act. Feb. 4, 1887, c. 104, Part IV, § 401, added May 16, 1942, c. 318, § 10, 56 Stat. 284, 49 U.S.C.A. § 1010(f).

7. 49 U.S.C.A. § 17(8).

8. Administrative Procedure Act, § 10(e) (B), (3), 5 U.S.C.A. § 1009(e) (B) (3).

9. Acme Fast Freight, Inc., v. United States, D.C.Del., 116 F.Supp. 97, 99.

made as to the second statutory requirement (consistency with the public interest and the national transportation policy). The difference between the first and second set of findings was occasioned solely by an intervening subordinate finding that plaintiff's alter ego, Florida Shippers, engaged in unauthorized freight forwarder operations.

Conceding that there is substantial evidence for this subordinate finding, the central question is whether such finding is substantial evidence supporting the ultimate negative finding that to grant ABC additional rights would not be consistent with the public interest and national transportation policy. The prophecy that a past violation in a single instance makes the grant of additional rights to the violator thus inconsistent is supported by no proof in the record whatsoever. The validity of the causal connection between the former dereliction and subsequent performance consistent with public interest and transportation policy, stands or falls on the bare assertion of the proposition that one follows the other. Is the inherent probability of such major premise in the instant syllogism sufficient to amount to substantial evidence without any proof that such is the case? In the light of all relevant circumstances, I think not.

So far from indicating such drastic consequences as revocation, suspension or termination of a freight forwarder's permit for such violation, Congress has made prerequisite a preliminary warning. No instance of such violation as grounds for denial of this permit has been called to the court's attention in the practice of the Commission itself, but several have been cited where the Commission has found such violation insuf-, ficient.[10] No standard of an impeccable record for a freight forwarder applicant has been set by Congress, and presumably none by the Commission prior to the instant case. Indeed Congress has made the grant of such permit mandatory, and not permissive.[11]

No standard of the character of the applicant has been included for freight forwarders, although Congress has seen fit to establish such a requirement for other licenses. In Federal Communications Commission v. WOKO, Inc.,[12] relied upon by my brethren, the statute explicitly required that " 'All such applications shall set forth such facts as the Commission by regulation may prescribe as to the * * * character * * *, and other qualifications of the applicant to operate the station' ".[13] Also unlike the statute before this court was the provision that "Any station license * * * may be revoked (1) for false statements * * *."[14] And the evidence bearing upon character and false statements in that case established sustained and repeated misrepresentation of true ownership of capital stock in applications over a period of many years.

I do not insist nevertheless that the character of a prospective freight forwarder is irrelevant. Such character, in the sense of the sum total of the applicant's potentialities to serve or disserve the public interest and national transportation policy, might well be appraised by the Commission. I find no such appraisal in this record, other than the conclusory findings that the applicant is "ready, willing and able," yet to grant the permit would be inconsistent with public interest and national transportation policy solely because of a past violation.

10. See R. T. C. Term Corp., 265 I.C.C. 527 (1949); Howard Terminal Corp., 260 I.C.C. 773 (1946); Carloaders Corp., 260 I.C.C. 123 (1944).

11. 49 U.S.C.A. § 1010.

12. 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204.

13. 329 U.S. at page 226, 67 S.Ct. at page 215; 48 Stat. 1085, 47 U.S.C.A. § 308 (b).

14. 48 Stat. 1086, 47 U.S.C.A. § 312(a)

No doubt an habitual course of misconduct on the part of a freight forwarder would substantiate the improbability that to grant him a permit would subserve the prescribed public interest and policy. But neither this court on review, nor the Commission on its hearing, may take official notice of alleged prior violations by ABC unless they are made part of the record. "Nothing can be treated as evidence which is not introduced as such."[15] For an agency to take administrative notice of particular violations, especially as here when the alleged ones [16] indicate that the proceedings were directed against an Arthur J. Brown and not ABC, would irretrievably deny ABC its right of rebuttal.[17] Indeed, even the report of the Commission vacating the order makes no mention of such prior transgressions.[18]

A legislative determination that a single violation makes a grant of permit inconsistent with public interest and national transportation policy may not be capricious and arbitrary. But the additional statutory test for review of this administrative determination is whether it is unsupported by substantial evidence.

The connection between the prior violation and the improbability of consistency with public interest and national transportation policy is purely hypothetical in the instant case. "Quite obviously, the statement of such a possibility, founded as it was upon a hypothesis having no support in the record, is a far cry from proof of any fact, and may not, even when considered alone, be deemed to satisfy the requirements of the substantial evidence rule." [19]

Accordingly, I would set aside the order of the I. C. C.

15. United States v. Abilene & Southern Ry. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 569, 68 L.Ed. 1016.

16. Arthur J. Brown, I.C.C. Docket No. FF–38, decided May 5, 1944; Id., 265 I.C.C. 41.

17. Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

18. 285 I.C.C. 276.

19. McCormack v. National City Bank of New York, 303 N.Y. 5, 9, 99 N.E.2d 887, 888. See also Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; National Labor Relations Board v. Sparks-Withington Co., 6 Cir., 119 F.2d 78, certiorari dismissed 314 U.S. 703, 62 S.Ct. 477, 86 L.Ed. 562.