294 F.2d 235
 EASTERN AIR LINES, INC., Petitioner
v.
CIVIL AERONAUTICS BOARD, Respondent.
American Airlines, Inc., Braniff Airways, Inc., Continental Air Lines, Inc., United Air Lines, Inc., Western Air Lines, Inc., Intervenors.
 No. 16181.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 4, 1961.
 Decided June 29, 1961.
 
 Mr. Harold L. Russell, Atlanta, Ga., with whom Mr. E. Smythe Gambrell, Atlanta, Ga., was on the brief, for petitioner.
 Mr. O. D. Ozment, Associate General Counsel, Litigation, Civil Aeronautics Board, John H. Wanner, General Counsel, Civil Aeronautics Board, Joseph B. Goldman, Deputy General Counsel, Civil Aeronautics Board, William F. Becker, Attorney, Civil Aeronautics Board, Richard A. Solomon and Robert Alexander Hammond, III, Attorneys, Department of Justice, were on the brief, for respondent. Mr. Franklin M. Stone, General Counsel, Civil Aeronautics Board at the time the record was filed, also entered an appearance for respondent.
 
 
 1
 Messrs. Howard C. Westwood, Alfred V. J. Prather and William H. Allen, Washington, D. C., were on the brief for intervenor, American Airlines, Inc.
 
 
 2
 Mr. B. Howell Hill, Washington, D. C., was on the brief for intervenor, Braniff Airways, Inc.
 
 
 3
 Mr. C. Edward Leasure, Washington, D. C., was on the brief for intervenor, Continental Air Lines, Inc.
 
 
 4
 Mr. James Francis Reilly, Washington, D. C., was on the brief for intervenor, United Air Lines, Inc.
 
 
 5
 Mr. John W. Simpson, Los Angeles, Cal., was on the brief for intervenor, Western Air Lines, Inc.
 
 
 6
 Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.
 
 
 7
 FAHY, Circuit Judge.
 
 
 8
 Eastern Air Lines, Incorporated, petitions this court to review an order of the Civil Aeronautics Board of November 25, 1960.[1] The order terminated a Board proceeding known as the General Passenger Fare Investigation, which the Board had initiated May 10, 1956, on its own motion for the purpose, as stated by the Board, of determining
 
 
 9
 "[W]hether the fares and charges demanded, collected, and received by each of the respondents, individually or jointly with one or more of the other respondents, for the transportation of passengers within the continental United States, excluding Alaska, are generally unjust or unreasonable, and if found to be unjust or unreasonable, to determine what over-all percentage changes in the fares or charges of the respondents collectively or individually should be permitted or required."[2]
 
 
 10
 The scope of the possible orders to be issued on the basis of the investigation was limited to flat percentage changes in the fares of particular air carriers or groups of carriers. The twelve domestic trunkline carriers, of which Eastern is one, were made respondents. Other parties, including the United States through the General Services Administration, were made intervenors.[3] After a lengthy hearing and other very extensive and expensive proceedings, including Initial Decision by the Examiner, exceptions thereto, briefs and oral arguments before the Board, the Board entered the order complained of without determining the justness and reasonableness of existing trunkline passenger fares or the fares that would be just and reasonable. What the Board did is summarized in the following portion of its opinion:
 
 
 11
 "Upon consideration of the record, the contentions of the parties, and Form 41 data for recent years, we conclude that the record before us is inadequate to permit the fixing of the fare level. However, the record does permit us to formulate significant standards which will contribute to the regulation of fares.
 
 
 12
 "Our difficulty in attempting to prescribe the just and reasonable fare level from the present record is very basic. Neither the carriers nor Bureau Counsel have submitted forecasts of operations, revenues, and expenses which we find are reliable indicia of what future results will be. In addition, there is an absence of data in the record presenting the experience of operations with the new turbine-engine aircraft which are becoming an ever-larger element of the industry's operations. In these circumstances, it would be futile to attempt to prescribe the appropriate fare level on the basis of the record herein."[4]
 
 
 13
 As indicated from the foregoing the investigation was not entirely barren. The Board discussed at considerable length, and made findings and conclusions respecting, to use its own language, "standards * * * for passenger fare regulation in four basic areas: profit element, rate base, depreciation, and taxes."[5] The Board further stated: "These standards will be used in assessing future fare proposals of the carriers, and in assisting the Board in evaluating the reported results of the carriers so that the Board may determine when action on its own motion should be taken."[6]
 
 
 14
 Eastern's petition for review, however, is not directed to these matters which were determined by the Board, but, as we have said, to its failure to decide the question of justness and reasonableness of fares, a principal if not the chief purpose for which the investigation had been instituted. Eastern seeks remand to the Board with directions to decide the case either upon the present record or after receiving additional evidence, contending that the Board erred in not performing its duty to regulate rates. Eastern points out that the Board has clearly recognized this duty, and that the Examiner's Initial Decision acknowledges that "The Board must fix reasonable rates in proceedings raising the issue of such rates so long as the Act requires it to do so."
 
 
 15
 We agree the Civil Aeronautics Act imposes the stated duty upon the Board.[7] Our recent decision in Minneapolis Gas Co. v. Federal Power Comm., 111 U.S.App.D.C. ___, 294 F.2d 212, upon which Eastern heavily relies, is an instance where this court required the Federal Power Commission, having a comparable duty under the Natural Gas Act, to perform its duty by deciding a particular case in the circumstances there present. The Power Commission by order under section 4(e)[8] of the Act had entered upon a hearing concerning the lawfulness of a new schedule proposing increased rates filed with the Commission by a producer of natural gas. The Commission suspended the new schedule pending a hearing and decision. After a hearing the Examiner decided that the company had failed to sustain its burden of proof. The Commission, upon exceptions made, then terminated the proceedings, reciting in its order that the result was to leave the proposed rates in effect. While the order also recited that the rates were just and reasonable, this court concluded that in terminating the proceedings the Power Commission "did not render a decision" and that it should have done so. While there are similarities between that case and this, the dissimilarities lead us to a different result. There the hearing was directed to a particular new schedule of rates filed by a producer. A discretion resided in the Commission to permit the new tariff to go into effect or to enter upon a section 4(e) hearing as to the lawfulness of the increases. Having exercised its discretion to do the latter, and having pursued the course embarked upon through hearing, Examiner's decision and Board hearing on exceptions thereto, and thus having come to the point of decision, this court held that to terminate the proceedings and fail to decide the case was inconsistent with the Commission's obligation either to let the Initial Decision of the Examiner stand or itself to render a decision; that is, that the point of no return in the exercise of its discretion under section 4(e) had been passed.
 
 
 16
 In the end our question is whether in the present proceedings the Board reached a point where it could not lawfully exercise a discretion to terminate the proceedings. In a narrow procedural sense the point reached was similar to that reached in Minneapolis Gas, but the differences in the two proceedings render the procedural point reached in the two cases of quite different significance. This case was a general investigation of the general level of the passenger fares of all the trunkline carriers. It was not an inquiry into the justness and reasonableness of increases in rates set forth in a particular new tariff filed by a carrier. Moreover, as the investigation progressed changes in the airline carrier industry were occurring in such important and relevant respects — particularly, the transition to turbine-engine craft — that the Board felt unable at this time to accomplish on the available data what initially it had set out to do.
 
 
 17
 The duty of the Board to prevent unjust and unreasonable rates, and to establish those that are lawful, does not require that the duty be performed as a result of this particular investigation. We cannot say that the Board decision not to decide the question of justness or reasonableness of the general level of trunkline fares requires this court to compel the Board to do so on this record or as it might be enlarged at this time, especially in view of the changes now under way in the industry. The Board's duty is to be performed in the context of particular proceedings. It is not mandatory in this one.[9]
 
 
 18
 While we neither commend nor condemn the Board for abandoning a principal objective of its investigation, after having subjected Eastern to a very substantial outlay of time and money, we are not convinced, as we were convinced in the circumstances presented by Minneapolis Gas, that the Board lost all discretion as to the course the investigation should take.
 
 
 19
 We have considered the Board's contention that, in any event, Eastern's petition for review should be dismissed because it is not adversely affected by the order. The statutory basis for review is that one must disclose "a substantial interest" in the order.[10] Our outline of the proceedings in this opinion, however brief, we think has sufficiently demonstrated that Eastern's interest in the order is substantial. Its claim of a right to obtain in the terminated proceedings a more definite decision as to its passenger rates, though a claim we do not enforce on the merits, is by no means so insubstantial that we are not required to consider it.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 CAB, Order E-16068, Nov. 25, 1960
 
 
 [2]
 CAB, Order E-10279, May 10, 1956
 
 
 [3]
 CAB, Order E-10488, July 27, 1956
 
 
 [4]
 Order E-16068, at 3
 
 
 [5]
 Id. at 4
 
 
 [6]
 Ibid
 
 
 [7]
 See § 404, 52 Stat. 993 (1938), as amended, 49 U.S.C.A. § 1374; § 1002, 52 Stat. 1018 (1938), as amended, 49 U.S.C.A. § 1482
 
 
 [8]
 52 Stat. 823 (1938) 15 U.S.C.A. § 717c (e)
 
 
 [9]
 Had the Board determined that existing rates were unjust or unreasonable the case would be different. Eastern does not contend that its rates are unjust or unreasonable
 
 
 [10]
 § 1006, 72 Stat. 795 (1958), 49 U.S.C.A. § 1486(a)