FREIGHT FORWARDERS INSTITUTE, Acme Fast Freight, Inc., National Carloading Corporation, Republic Carloading & Distributing Co., Inc., and Universal Carloading & Distributing Co., Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

No. 65 Civ. 3939.

United States District Court
S. D. New York.

Jan. 26, 1967.

James L. Givan, Washington, D. C. (S. S. Eisen, Thomas D. Shea and George H. Leonard, New York City, Giles Morrow, Washington, D. C., of counsel), for plaintiffs.

Bryce Rea, Jr., Washington, D. C., Thomas D. Shea, New York City (Rea, Cross, Knebel & Kinnaird, Theodore Polydoroff, Washington, D. C., of counsel), for intervening plaintiffs National Motor Freight Traffic Ass'n, Inc., and others.

Michael Hess, Asst. U. S. Atty., New York City (Donald F. Turner, Asst. Atty. Gen., Irwin A. Seibel, Atty., Dept. of Justice, Robert M. Morgenthau, U. S. Atty., New York City, of counsel), for the United States.

Manny H. Smith, Washington, D. C. (Robert W. Ginnane, Gen. Counsel, Washington, D. C., of counsel), for Interstate Commerce Commission.

Seymour H. Kligler, New York City, Stanley E. Tobin, Los Angeles, Cal. (Hill,

Farrer & Burrill, Carl M. Gould, Los Angeles, Cal., of counsel), for intervening defendant Los Angeles Wholesale Institute.

Joe G. Fender, Houston, Tex., Seymour H. Kligler, New York City (Robert Elliott, Jr., Janes, Elliott & Van derBorght, St. Paul Minn., of counsel), for intervening defendant National Conference of Non-Profit Shipping Ass'ns, Inc.

David M. Pincus, North Miami, Fla., (Goldstein & Goldstein, New York City, of counsel), for intervening defendant Piggy-Back Shippers Ass'n of Florida.

John A. Fisher, New York City, Ronald N. Cobert, Washington, D. C. (Fisher & Wilson, New York City, Grove, Jaskiewicz, Gillam & Putbrese, Washington, D. C., of counsel), for intervening defendant American Institute for Shippers' Ass'ns, Inc.

Before FEINBERG, Circuit Judge, and PALMIERI and FRANKEL, District Judges.

FEINBERG, Circuit Judge:

This is an action to review two orders of the Interstate Commerce Commission which allowed Piggy-Back Shippers Association of Florida ("Piggy-Back") to continue operation.[1] Therefore, once again [2] the cumbersome, inefficient machinery of a statutory three-judge court must be invoked to review the Commission's action.[3] For reasons set forth below, we sustain the Commission insofar as it ruled, but remand for reconsideration of the issue it failed to decide.

Piggy-Back is one of a growing number of unlicensed shipper associations [4] whose activities pose a threat to Commission-regulated freight forwarders such as the five plaintiffs and two intervening plaintiffs in this case.[5] Freight

---

1. The complaint seeks review of a report and order of the Commission, Division 1, of December 21, 1964, 323 I.C.C. 672, entitled "Piggy-Back Shippers Association of Florida—Investigation of Operations," and an order of the Commission of July 14, 1965, which denied petitions for reconsideration of the prior order of Division 1.

2. The volume of Interstate Commerce Commission matters requiring three-judge courts is substantial.

| Fiscal year | No. of 3-judge court cases heard in all districts | |
|---|---|---|
| | ICC matters | All others |
| 1963 | 67 | 62 |
| 1964 | 50 | 69 |
| 1965 | 60 | 87 |
| 1966 | 72 | 90 |

1966 Admin.Office of U.S.Cts.Ann.Rep. II–36; 1965 id. at II–28; 1964 id. at 43; 1963 id. at II–24.

3. The statutory three-judge court device "particularly in regions where, despite modern facilities, distance still plays an important part in the effective administration of justice * * * dislocate[s] the normal operations of the system of lower federal courts * * *," Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), and by allowing a direct appeal to the

Supreme Court as a matter of right increases its work load. D. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 73–76 (1964). But see Note, 77 Harv.L.Rev. 299, 303–05 (1963). For criticisms of requiring this procedure for review of the Interstate Commerce Commission, see Administrative Conference, Final Report, reprinted in S.Doc.No. 24, 88th Cong., 1st Sess. VII, 10–11 (1963); D. Currie, supra at 76 n. 367; Friendly, The Gap in Lawmaking—Judges Who Can't and Legislators Who Won't, 63 Colum.L.Rev. 787, 801 (1963). The Interstate Commerce Commission itself has recommended to Congress that review of its decisions be in the courts of appeals. 1964 ICC Ann.Rep. 73–74; 1965 id. at 119–20.

4. See 1963 ICC Ann.Rep. 175.

5. The plaintiffs are Freight Forwarders Institute, Acme Fast Freight, Inc., National Carloading Corporation, Republic Carloading & Distributing Co., Inc., and Universal Carloading & Distributing Co., Inc. The intervening plaintiffs are National Motor Freight Traffic Association, Inc., Common Carrier Conference—Irregular Route and Regular Common Carrier Conference of the American Trucking Associations, Inc. The four intervening defendants are Piggy-Back Shippers Association of Florida, one of the defendants in the Commission proceeding, and

forwarders offer a transportation service to the public for profit; they specialize in the handling of less than carload or truckload freight and supply fast transportation including pickup and delivery. Shipper associations are also organized to obtain the benefit of volume freight rates; they are composed of groups of independent shippers of freight who have banded together for this purpose. However, they do not hold themselves out to the public but perform services on a nonprofit basis only for their dues-paying members.[6] Thus, these business entities are similar but nonetheless distinct, and the difference between them has been recognized by Congress. A freight forwarder is subject to the provisions of Part IV of the Interstate Commerce Act (the "Act"), 49 U.S.C. §§ 1001–1022, and is defined in relevant part in 49 U.S.C. § 1002(a) (5), as

> any person which * * * holds itself out to the general public as a common carrier to transport or provide transportation of property * * * for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates * * * shipments of such property, and performs * * * break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title [i. e., rail, pipe line, motor or water carriers].

Freight forwarders are required to obtain operating permits from the Commission and are subject to regulation in various other ways. On the other hand, the Act also takes note of shipper associations; thus, 49 U.S.C. § 1002(c) specifically precludes from regulation

> the operations of * * * a group or association of shippers, in consolidating or distributing freight for * * members thereof, on a nonprofit basis, for the purpose of securing the benefits of carload, truckload, or other volume rates * * *.

Although the Act recognizes and defines both types of organizations, whether a particular entity is one or the other—the issue presented here—may be a troublesome question.[7] This case began in October 1963, when the Commission on its own motion [8] commenced an investigation of Piggy-Back's activities to determine, among other things, whether it had been operating as a freight forwarder without a permit. There ensued a hearing before an examiner, a decision by Division 1 of the Commission, and denial of reconsideration by the full Commission. The Commission discontinued the proceedings against Piggy-Back, finding that although it had operated unlawfully in the past, Piggy-Back had sufficiently reformed to become a bona fide shipper association. Plaintiffs argue here that (1) the Commission's conclusion is not supported by substantial evidence and should be set aside; and (2) the Commission committed legal error in refusing to rule upon plaintiffs' claim that Piggy-Back is improperly participating in joint loading operations.

## I

Our discussion of plaintiffs' first point requires a close examination of the facts. Piggy-Back was organized in 1962 as an

Los Angeles Wholesale Institute, National Conference of Non-Profit Shipping Associations, Inc., and American Institute for Shippers' Associations, Inc.

6. For a full description of the function of freight forwarders, see Freight Consolidators Coop., Inc. v. United States, 230 F.Supp. 692, 696 (S.D.N.Y.1964).

7. See, e. g., Freight Consolidators Coop., Inc. v. United States, 230 F.Supp. 692

(S.D.N.Y.1964); ABC Freight Forwarding Corp. v. United States, 125 F.Supp. 926 (S.D.N.Y.1954), aff'd per curiam, 348 U.S. 967, 75 S.Ct. 531, 99 L.Ed. 753 (1955); National Motor Freight Traffic Ass'n v. Progressive Shippers Coop. Ass'n, 325 I.C.C. 458 (1965); New Orleans Shippers Ass'n—Investigation of Operation, 323 I.C.C. 619 (1964).

8. Pursuant to 49 U.S.C. § 1003(f).

unincorporated association under Florida law. Theodore Helin, the moving party in its formation, conceived the idea of forming a shipper association to combine highway trailers on railroad flatcars, so-called "piggyback" service. Because of cost considerations, this service is used only when there are two trailers to ship; moreover, the rail tariffs provide that there must be a mixture of commodities.[9] Therefore, as a practical matter, many shippers, who have only one trailerload or one commodity to ship, could not use piggyback service unless they banded together. Helin contacted the initial group of shipper members, drew up the association's articles and by-laws, called the organizational meeting, actually appointed the "elected" members of the board of directors, and obtained a contract as general manager with compensation at the rate of 10 cents per hundred pounds of freight handled. Thereafter, Helin exercised a free hand, unencumbered by effective control by the board of directors, whose principal decisions at meetings amounted to approval of new membership applications secured by Helin. By August 1963, Helin had run the association into about $20,000 debt. All of these findings by the examiner and Division 1 are undisputed, as is the legal conclusion reached from these facts—that up to this time, because Helin and not the members exercised full control over operations, Piggy-Back was not a bona fide shipper association entitled to non-regulated status.[10]

At this point, the positions of the parties diverge. The following additional findings are under particular attack: Beginning in August 1963, the theretofore passive directors became alarmed by the financial condition into which Helin had led their association and took an active interest in its management; a new gen-

eral manager was appointed, this time on a straight salary basis; the new manager was not permitted to sign checks independently; he was required to submit weekly financial reports to the board and reports to the members as well; indeed, the board exercised complete supervision and control over him; efforts were being made, and had been modestly successful, to pay off the association's debts; and no freight other than that of shipper members was being handled by the association. Thus, the examiner and Division 1 found generally that Piggy-Back was no longer "a 'paper' creature" of the general manager's own conception or a cloak under which an independent entrepreneur was acting.[11] Plaintiffs contend that the evidence of steps taken to reform Piggy-Back in the six months or so prior to the hearing was not substantial enough to justify the Commission's conclusion that Piggy-Back had now become eligible for the non-regulated status to which it was admittedly not entitled during the Helin regime.

The scope of our review of the Commission's findings is narrow: It is limited to determining whether the Commission's findings are based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or, phrased differently, on enough evidence to justify a refusal to direct a verdict, had there been a jury trial. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Applying this standard, we conclude that based on the entire record there is substantial evidence for the findings that "the 'coming to life' of the association * * * appears to have put an entirely different complexion upon the subject," and that as of the time of the hearing Piggy-Back was a bona fide shipper as-

9. See generally, Substituted Service—Charges and Practices of For-Hire Carriers and Freight Forwarders (Piggyback Service), 322 I.C.C. 301 (1964).

10. The examiner's findings were adopted by Division 1, which added findings of its own. In denying the petitions for reconsideration, the full Commission stated

that "the findings of Division 1 are in accordance with the evidence and the applicable law."

11. However, a cease and desist order was entered against Theodore Helin based on the findings that he had engaged illegally in freight forwarding, 323 I.C.C. at 676.

sociation. We need not feel enthusiastic about this conclusion. Whether a sinner has reformed is hardly ever free from doubt, a reason why the Commission has recently suggested that the Act "be amended to require associations to satisfy the Commission that they are bona fide shipper associations before they begin operations." [12] In any event, exercising the appropriate review, we will not set aside the Commission's findings on the extent or significance of the change in Piggy-Back's operations.

■ Plaintiffs attack not only the evidentiary basis for these key findings but also the legal criteria applied by the examiner and Division 1 to decide whether Piggy-Back qualified as a non-regulated shipper association or was instead an illegally operating freight forwarder. In Atlanta Shippers Ass'n—Investigation of Operations, 316 I.C.C. 259, 278 (1962) (Division 1), reconsidered, 322 I.C.C. 273, 283 (1964) (full Commission), the Commission engaged in a full-scale analysis of the distinctions between the two; one of the tests there announced was:

> Are the freight consolidating and distributing operations such that any person or persons other than the shipper-members of the association (a) have any right or ability to control, direct, or dominate such operations, or (b) bear the essential risks and burdens, financial and otherwise, of conducting the operations under consideration?

Negative answers to both questions are necessary to justify non-regulation. Plaintiffs argue that these criteria, which the Commission applied in this case, are insufficient because they do not require that association members be liable jointly and severally for the association's debts. Such an additional requirement was tangentially stated by Division 1 in its initial decision in the Atlanta Ship-

pers case, 316 I.C.C. at 278. However, the full Commission modified Division 1's test in its subsequent opinion in Atlanta Shippers, 322 I.C.C. at 285–88, expressly rejecting the need for joint and several liability of shipper association members. Indeed, in that opinion, the Commission ruled that a shipper association could be incorporated (unlike Piggy-Back), even though this might tend to reduce individual liability.[13] The Commission noted that, whether incorporated or not, shippers who are members of a non-regulated association are responsible as the beneficial owners of the goods moved and cannot insulate themselves in that respect from third persons,[14] that certain other risks are readily insurable, and that the major risk run by a shipper association is that the savings on volume rates will be eaten up by uneconomical operating costs. We agree with the Commission that it is sufficient that these risks *not* be borne by any party other than the shipper association itself, whatever its limitations on individual member liability, as long as the members in good faith exercise responsible control over their association's operations. See Atlanta Shippers, supra, 322 I.C.C. at 285.

■ Plaintiffs argue that despite the full Commission's rejection of the requirement that members be both jointly and severally liable, we should defer to the statement of the court in Freight Consolidators Coop., Inc. v. United States, 230 F.Supp. 692, 696 (S.D.N.Y.1964), which, in affirming an order of the Commission in Atlanta Shippers, quoted Division 1's language to the contrary. Plaintiffs point out that the court rendered its decision after the full Commission's decision reversing Division 1 on this point, and plaintiffs add that the court refused to amend its opinion to take account of the full Commission's reversal.

---

12. 1965 ICC Ann.Rep. 77.

13. It should be noted that Piggy-Back's amended articles do provide for joint (but not several) liability and that the members have implicitly assumed responsibility for the $20,000 in debts incurred during Helin's regime.

14. This safeguard has been recently strengthened by requiring shipper associations to advise carriers which member is the beneficial owner of freight listed on the bill of lading. Regulations for Payment of Rates and Charges, 326 I.C.C. 483, 494–95 (1966).

As to the latter argument, we think the court's denial of motions to amend its opinion is at most ambiguous; the court denied them without further elaboration on the dual grounds that the motions were untimely and without merit. Moreover, alteration of the opinion would not have changed the judgment. See orders dated Sept. 23, 1964, Freight Consolidators Coop., Inc. v. United States, 63 Civ. 55, S.D.N.Y. Finally, we think it apparent from a careful reading of the court's opinion that the issue of joint and several liability could not have been of much weight, considering its brief mention in contrast to all the other gross violations of the Act recited in detail. Therefore, we do not regard *Freight Consolidators* as necessarily inconsistent with our decision here.

■■ Plaintiffs also urge that since Piggy-Back's conception and early growth were due to Helin's unlawful activities, the Commission cannot reward Piggy-Back now by allowing it to continue. Plaintiffs in effect ask for the draconian rule that once a shipper association has violated the Act, its operations must be stopped. However, no adequate reason is given for thus hamstringing the Commission in determining the appropriate remedy for past illegal activity, a discretion it exercises in analogous situations.[15] Moreover, the precedents plaintiffs urge upon us are either distinguishable or actually support giving the Commission latitude.[16] Finally, plaintiffs and intervening defendants earnestly debate the issue of whether the Commission or Piggy-Back had the burden of proof, with much discussion of the difference between a "clarifying provision" and an "exception" in a statute. This exercise in semantics, while interesting, is beside the point. In Division 1's decision below, 323 I.C.C. at 673, 675, and in its brief here, the Commission accepts the proposition urged by plaintiffs that "one who claims the benefit of an exception to such a statute has the burden of proof that he comes within such exception." See Freight Consolidators Coop., Inc. v. United States, 230 F.Supp. 692, 699 (S.D.N.Y. 1964). However, the Commission argues that Piggy-Back met this test and we agree.

II

Plaintiffs' second contention is that the Commission arbitrarily failed to rule upon the merits of a material issue before it and thereby violated section 8(b) of the Administrative Procedure Act, 5 U.S. C. § 1007(b), which provides, inter alia,

> All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, *upon all the material issues of fact, law, or discretion presented on the record* * * *. [Emphasis added.]

The issue not decided was whether a non-regulated shipper association may engage in the practice of "co-loading" or "joint loading." The examiner found that at times Piggy-Back placed one of its truck trailers on the same railroad flatcar with a trailer of another non-regulated shipper association in order to take advantage of the cheaper railroad rate available through sharing an entire flatcar. Although the examiner characterized Piggy-

---

15. E. g., John C. Barrett Extension—Ironwood, Mich., 86 M.C.C. 567, 569 (1961); Riggs Dairy Express, Inc.—Investigation and Revocation of Certificates, 78 M.C.C. 574, 576 (1958); Railway Express Agency, Inc., Extension of Operations—Muskegon-Grand Rapids, 31 M.C.C. 661, 664 (1942).

16. E. g., Atlantic Refining Co. v. FTC, 381 U.S. 357, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965), upheld a Federal Trade Commission cease and desist order against a restraint of trade by Atlantic Refining Co. and Goodyear Tire & Rubber Co. If anything, the case emphasizes that "Congress has placed in the Commission in the first instance the power to shape the remedy necessary * * *." 381 U.S. at 377, 85 S.Ct. at 1510. See also Gilbertville Trucking Co. v. United States, 371 U.S. 115, 130, 83 S.Ct. 217, 226, 9 L.Ed.2d 177 (1962) ("Judicial review is * * * limited. 'It extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy.'")

Back's co-loading as "sporadic and infrequent," its present manager testified that "if it were necessary [to continue], we would." While the examiner did find that a limited type of co-loading had occurred and ventured the opinion that it was permissible, he did not make a formal determination of its legality. Division 1 also refused to decide the issue, stating (323 I.C.C. at 675):

> The extent of the service performed and the pertinent facts involved are not sufficiently detailed in the present record to permit an authoritative determination respecting joint loading.

Plaintiffs contend (to summarize briefly) that non-regulated shipper associations are forbidden to co-load for two reasons: (1) When one of two associations "marries" the two trailers on a flatcar and executes the single bill of lading for that flatcar showing itself as the car's consignor, it is consolidating freight for others than itself or its members contrary to 49 U.S.C. § 1002(c), quoted above;[17] and (2) the saving each association effects by co-loading is compensation or profit to the association, destroying its non-profit status.

The co-loading issue was raised at the very start of these proceedings in the hearing before the examiner. The record amply demonstrates that the matter was presented to the examiner and to the Commission at every stage. For example, the Commission's Bureau of Inquiry and Compliance fully briefed this issue before the examiner rendered his report and again afterward in its statement of exceptions thereto. So did various intervenors. After the decision of Division 1, several of the parties filed a joint petition with the Commission asking it to find that the proceeding involved issues of general transportation importance.[18] The first of the two issues raised in that petition was the legality of co-loading by a shipper association. The full Commission granted the petition, and thereafter intervening parties filed additional briefs arguing both sides of the co-loading issue. Then, without discussion, the full Commission affirmed Division 1's decision on the merits, including, of course, its failure to rule on co-loading.

Defendants argue that the requirement of the Administrative Procedure Act was met when Division 1 gave its reason for refusing to decide the co-loading issue, i. e., that the extent and nature of Piggy-Back's co-loading was not sufficiently detailed to permit "an authoritative determination." However, Piggy-Back has been found to share railroad flatcars with other non-regulated associations and the manager of Piggy-Back stated that he intended to continue the practice when necessary. Moreover, reliance on inadequacy of the record is questionable since the Commission itself initiated this proceeding on its own motion. The observations of a former Interstate Commerce Commissioner, quoted with approval by this court in Isbrandtsen Co. v. United States, 96 F.Supp. 883, 892 (S.D.N.Y.1951), aff'd per curiam by an equally divided Court sub nom. A/S J. Ludwig Mowinckels Rederi v. Isbrandtsen Co., 342 U.S. 950, 72 S.Ct. 623, 96 L.Ed. 706 (1952), apply here:

> [Administrative agencies] are not expected merely to call balls and strikes, or to weigh the evidence submitted by the parties and let the scales tip as they will. The agency does not do its duty when it merely decides upon a poor or nonrepresentative record. As the sole representative of the public, which is a third party in these proceedings, the agency owes the duty to investigate all the pertinent facts, and to see that they are adduced when the parties have not put them in * * *. The agency must always act upon the record made, and if that is not sufficient, it should see the record is supplemented before it acts.

Accord, Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608 (2d Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct.

---

17. See p. 463 supra.

18. See 49 U.S.C. § 17(6); 49 C.F.R. § 1.-101(a) (4) (1963).

1462, 16 L.Ed.2d 540 (1966). Defendants suggest that the co-loading issue may be decided soon in another proceeding which has also been designated as one of general transportation importance.[19] However, the record here does not reassure us that such designation is a sound basis for assuming that the question will be decided. The issue certainly is important to plaintiffs, since if their position is accepted, the competition they face from Piggy-Back and other associations that co-load may well be eliminated. We realize that not all significant issues are "material" in the sense that their resolution would affect the result in a particular case. Thus, in this proceeding, it would not be necessary to decide the co-loading issue if the Commission had for other reasons found Piggy-Back not to be a bona fide shipper association.[20] But in the posture of the case now, the issue is plainly material.

In an analogous situation, the Court of Appeals for the District of Columbia Circuit in Minneapolis Gas Co. v. FPC, 111 U.S.App.D.C. 16, 294 F.2d 212, 215 (1961), said:

> We think the Commission cannot terminate a proceeding after it has actually conducted a hearing to the point of receiving an Examiner's initial decision, without rendering a decision upon the issue presented * * *. We do not have before us, and therefore do not decide, whether the Commission may terminate a proceeding, once entered upon, at some point prior to the conclusion of the evidentiary hearing. A change of mind, midstream so to speak, may or may not be permissible. But we are of opinion that the Commission, having received all the evidence the parties wish to present, and having before it an Examiner's findings, conclusion and decision, cannot at that point change its mind wiping out the hearing as though it had never occurred, and in effect decide that it will not enter upon a hearing.

See also American Boiler Mfrs. Ass'n v. NLRB, 366 F.2d 815, 820–822 (8th Cir. 1966); Western Air Lines, Inc. v. CAB, 351 F.2d 778 (D.C.Cir. 1965); cf. A. L. Mechling Barge Lines, Inc. v. United States, 376 U.S. 375, 84 S.Ct. 874, 11 L.Ed.2d 788 (1964); American Trucking Ass'ns v. United States, 326 U.S. 77, 84–86, 65 S.Ct. 1499, 89 L.Ed. 2065 (1945); Deering Milliken, Inc. v. Johnson, 295 F.2d 856, 860–866 (4th Cir. 1961). We are aware that shortly after *Minneapolis*, the same court and then the Supreme Court refused to set aside an order of the Federal Power Commission that terminated an investigation of the lawfulness of certain rates for natural gas, Wisconsin v. FPC, 112 U.S.App.D.C. 369, 303 F.2d 380 (1961), aff'd, 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963). But in contrast, in that case, the Supreme Court noted:[21]

> This is not a case in which the Commission has walked right up to the line and then refused to cross it—a case, in other words, in which all the evidence necessary to a determination had been received but the determination was not made.

*Wisconsin* was also clearly distinguishable because the Commission there stated that "it does not have the facilities to reopen this case * * * and at the same time to proceed expeditiously with its area investigations."[22] There is no

---

19. National Motor Freight Traffic Ass'n v. Columbia Shippers Ass'n, MC–C–3192 (Sub-No. 7). See also National Motor Freight Traffic Ass'n v. Pacific Progress Shippers Ass'n, MC–C–3192 (Sub-No. 33).

20. Such was the case in *Atlanta Shippers*, supra.

21. 373 U.S. at 311, 83 S.Ct. at 1275.

22. Id. at 313, 83 S.Ct. at 1277; see 77 Harv.L.Rev. 189–91 (1963). We also consider distinguishable Brandenfels v. Day, 114 U.S.App.D.C. 374, 316 F.2d 375, cert. denied, 375 U.S. 824, 84 S.Ct. 66, 11 L.Ed.2d 57 (1963) (plaintiff estopped to challenge Post Office's termination of proceeding without prejudice, having previously, to his advantage, agreed to this disposition); Cities of

suggestion that any such problem is presented here. The Commission on this record was able, if it saw fit, to rule that Piggy-Back's co-loading was perfectly proper as a matter of law or so minor as to be *de minimis*; [23] in either event, plaintiffs would then have had an opportunity to test the rulings. We do not suggest that the Commission must determine all aspects of the co-loading problem in this proceeding. We realize that the practice takes more than one form and that the Commission may wish to defer ruling on other types not practiced by Piggy-Back until it obtains a more representative view of the factors involved. Indeed, recognizing that there may be circumstances justifying an agency's refusal to exercise its unquestioned jurisdiction, cf. NLRB v. Denver Bldg. & Const. Council, 341 U.S. 675, 684–685, 71 S.Ct. 943, 95 L.Ed. 1284 (1951), we hold only that the Commission has shown no such justification here. However it decides in this case, the Commission will not seriously be foreclosed from later amplification or reconsideration in another, perhaps more general, proceeding.[24] Under all of these circumstances, we feel that on this record, the Commis-

sion was required to rule on the legality of Piggy-Back's co-loading.

■■ But plaintiffs ask us to decide the co-loading issue here and now. They seek our determination that co-loading may not be engaged in by a non-regulated shipper association, and that since Piggy-Back has co-loaded and may again, it is not entitled to non-regulated status. However, these questions of whether specific conduct is illegal and what remedy is appropriate are peculiarly suited for the Commission's judgment, and we agree with defendants' position that their determination should in the first instance be left to the Commission.[25] Accordingly, we hold that on this record the Commission's failure to rule upon the issue of Piggy-Back's co-loading was error, 5 U.S.C. § 1009(e), and remand that issue to the Commission for its initial determination.

We affirm the Commission's findings and orders that Piggy-Back is a bona fide shipper association, except insofar as the co-loading issue may affect its status and as to that we remand for further proceedings consistent with this opinion.[26]

---

Lexington v. FPC, 295 F.2d 109, 119–122 (4th Cir. 1961) (issue settled between all parties but one prior to proposed formal hearing); Eastern Air Lines, Inc. v. CAB, 111 U.S.App.D.C. 39, 294 F.2d 235, cert. denied, 368 U.S. 927, 82 S.Ct. 363, 7 L.Ed.2d 191 (1961) (changes in industry made determination of broad issue, even on enlarged record, impractical).

23. We express no view as to these issues on the merits, nor do we suggest that the Commission is precluded from allowing any party to supplement the record before it.

24. E. g., Yale Transp. Corp. v. United States, 210 F.Supp. 862, 864 (S.D.N.Y. 1962), aff'd per curiam, 373 U.S. 540, 83 S.Ct. 1537, 10 L.Ed.2d 687 (1963). We, of course, do not preclude the Commission from consolidating this proceeding with the one in which broader issues of

co-loading have apparently already been raised. See note 19 supra.

25. See, e. g., Gilbertville Trucking Co. v. United States, 371 U.S. 115, 130, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962); Far E. Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

26. Two motions made prior to argument are disposed of as follows: A brief submitted by Goldstein & Goldstein, David M. Pincus of counsel, was inadvertently designated as submitted in behalf of "Los Angeles Wholesale Institute"; those words on the cover page and page 1 are deemed stricken and replaced by the correct designation, "Piggy-Back Shippers Association of Florida." On consent of David M. Pincus made at oral argument (transcript p. 76), certain matter contained in that brief not part of the record before the court is also stricken.