GILBERT CARRIER CORPORATION,
Plaintiff,

v.

RECEIVERS AND SHIPPERS, INCOR-
PORATED, Defendants.

No. 72–696–DWW.

United States District Court,
C. D. California.

Nov. 3, 1972.

Karl K. Roos, Knapp, Gill, Hibbert & Stevens, Los Angeles, Cal., Herbert Burstein, Zelby & Burstein, New York City, for plaintiff.

Ronald N. Cobert, Grove, Jaskiewicz & Gilliam, Washington, D. C., Donald Murchison, Murchison & Davis, Beverly Hills, Cal., for defendants.

## ORDER DENYING INJUNCTION AND DISMISSING COMPLAINT

DAVID W. WILLIAMS, District Judge.

Receivers and Shippers Inc. (RSI) was formed in 1961 by a group of Santa Monica retail merchants who bought ready-to-wear clothing in New York and were faced with the problem of shipping the merchandise to the Los Angeles area. The retailers' purpose was to group their several small purchases into one container so they could realize reduced shipping costs and thus compete more favorably with larger stores. RSI is organized as a non-profit company and charges its members dues of $6.00 per year. The member that uses the service is also billed for his share of the total freight costs.

When the local merchant makes a selection of goods from the salesman that calls on him, he gives the salesman an RSI sticker which is placed on the order form and this informs the manufacturer how the buyer wants the merchandise shipped. In the early years, the association used the services of Gilbert Carrier Corp. which consolidated the various orders in New York and delivered them to a terminal in Los Angeles where the bulk was broken and the various small orders sent by truck to the member merchants. Gilbert is a common carrier by motor vehicle operating pursuant to a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission and maintaining offices in Secaucus, New Jersey.

In 1970 RSI decided that the services Gilbert was rendering were too expensive and it terminated its relationship with the carrier. It selected Nelson Inter-Modal Company as a consolidating agent for its members and engaged Keystone Terminal Company of New York to see that the trailer delivered to it by Nelson was sent by piggyback rail to Los Angeles where A & B Garment Company would break-bulk and deliver the segments to the various merchant members of defendant.

Nelson prepares the manifests as it consolidates the shipments and, although its instructions from defendant are to include freight only from defendant's members, occasionally Nelson has included a small portion of non-members' freight.[1] When this happens, RSI receives a bill for the full trailer and collects from the non-member its share of the tariff. RSI has made several efforts to caution Nelson about preparing mixed loads but, possibly through inadvertence, it continues to occasionally happen.

Plaintiff sues to enjoin defendant from "operating in interstate commerce in violation of Sections 303(c), 306, 309 and 1010 of the Interstate Commerce Act, 49 USC 301 et seq." upon the theory that defendant holds itself out as a common carrier to the general public while purporting to be an exempt shipper's association within the meaning of Sec. 402(c)(1) of the Act.

Plaintiff has failed to show that defendant holds itself out to the public as a common carrier or that it solicits freight from the public or solicits members for its own organization. The defendant owns no trucks, trailers or other transporting equipment, hires no drivers and provides no assembling, consolidation or distributing services for persons not its members. In the few instances where Nelson has inadvertently included a de minimus amount of non-member freight in trailers billed to defendant,

1. The managing agent of RSI testified that in a recent month ony 225 lbs of non-member freight was included in a total shipment of over 300,000 lbs.

that freight is broken out upon arrival in Los Angeles and the consignee is called and told he must arrange to receive it from the terminal.

RSI attempts to operate on a non-profit basis but there are times when it has suffered an operational deficit. It does not pass these losses on to its members in the form of increased dues, but rather increases the freight rates. There is no evidence that any common ownership exists between defendant on the one hand and Nelson Inter-Modal, Keystone Terminal and A & B Garment on the other. Defendant insists it doesn't have written contracts with those agencies and can terminate its dealings with them at will.

The difference between a regulated freight forwarder and a non-regulated shipper association was discussed in In Atlanta Shippers Association—Investigation of Operations, 316 I.C.C. 259, 278 (1962), reconsidered 322 I.C.C. 273, 283 (1964) (full commission). The test used was:

Are the freight consolidating and distributing operations such that any person or persons other than the shipper-members of the association (a) have any right or ability to control, direct, or dominate such operations, or (b) bear the essential risks and burdens, financial and otherwise of conducting the operations under consideration?

Negative answers to both questions are necessary to justify non-regulations. The full commission later modified the test by rejecting the need for joint and several liability of shipper association members (Atlanta Shippers, 322 I.C.C. at 285); Freight Forwarders Institute v. United States, 263 F.Supp. 460, (D. D.C.1967).

The issue is whether an association of shippers may provide for its members the service of assembling, consolidating, break-bulk and distribution of the member's shipments. If it can, we must then determine whether that association must perform these services itself

or may provide for the performance of such services for its members.

Section 402(c)(1) of the Act (49 U.S. C. § 1002(c)(1) provides,

"The provisions of this chapter shall not be construed to apply (1) to the operations of a shipper, or a group or association of shippers, in consolidating or distributing freight for themselves or for the members thereof, on a nonprofit basis, for the purpose of securing the benefits of carload, truckload, or other volume rates * * * *"

The House Report accompanying the companion bill S. 210, 77th Cong., 1st Sess. (1941) indicates:

"The definition (of a freight forwarder) therefore draws a line of distinction which clearly excludes brokers, non-profit associations of shippers, warehousemen, and pool-car operators, as those persons normally operate, since such persons do not do all of the things required under the definition to constitute a freight forwarder. In order to make absolutely sure, however, that the definition cannot by construction be held to cover shippers, groups of shippers, and non-profit associations of shippers, consolidating or distributing freight for themselves or their members, or to cover warehousemen, pool-car operators, and other shippers' agents engaged in consolidating or distributing pool cars, and not assuming responsibility for the through movement of the property, subsection (c) was included in this section."

It seems clear that the sense of the Act is to exempt from regulation an organization of the type the evidence shows defendant to be. It began as a group of garment merchants who were seeking on a non-profit basis to pool their shipments from the east coast in order to obtain the advantage of volume rates. It has not held itself out to the public in any fashion or solicited business from non-members. Its Board of Directors consists of elected members

who maintain a firm control over the activities of the association although they leave its day-to-day operation to a managing agent who is paid on the basis of the poundage shipped. Defendant owns no equipment for handling or shipping cargo and hires no drivers. Because Nelson Inter-Modal was the low bidder, it engaged its services as a consolidator and appointed Keystone as its agent to place the trailer on a flatcar bound for Los Angeles. One flatcar takes two trailers, and Keystone would often marry defendant's trailer with that of another shipper or group of shippers. Upon arrival, the shipment is broken down and distributed to the various members by A and B Garment Company. This method was approved in Interstate Commerce Commission v. Delaware Lackawanna & Western Railroad Co., 220 U.S. 235, 243, 31 S.Ct. 392, 55 L.Ed. 448 (1911).

A non-profit shippers association may arrange with dependent agents to perform such services. Columbia Shippers and Receivers Association, Inc. v. United States, 301 F.Supp. 310 (D.Del.1969).

The contention that defendant is in fact a freight forwarder because it does not itself perform the consolidation and distributing services for its members, arranging for others to provide it, is not well taken. A shippers' association may utilize terminals at the point of origin and the destination of the shipment and not be subject to regulation under the freight forwarder provisions of the Act. Likewise, the agencies which provide for the assembly, consolidation and distribution of the small shipments of defendant's members are not carriers requiring licenses. Acme Fast Freight v. United States, 30 F.Supp. 968 (S.D.N.Y.1940), aff'd, per curiam 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993 (1940).

I am satisfied from the evidence that those few instances when defendant's trailer arrives carrying a small portion of non-members' merchandise are without defendant's knowledge and not pursuant to its instructions to Keystone. Defendant must continue its efforts to completely eliminate even these infrequent occurrences and defendant's managing agent shall collect no commission on such freight.

There is no basis for injunctive relief and the complaint is ordered dismissed.