## UNITED STATES et al. v. PACIFIC COAST WHOLESALERS' ASSOCIATION et al.

NO. 113.

Argued January 10, 1950.—Decided February 6, 1950.

*J. Roger Wollenberg* argued the cause for the United States and the Interstate Commerce Commission, appellants in No. 113. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Bergson* and *Daniel W. Knowlton. H. L. Underwood* was also of counsel.

*Harry C. Ames* argued the cause and filed a brief for the Freight Forwarders Institute, appellant in No. 114.

*Hugh Gordon* and *Wyman C. Knapp* were on a brief for the Pacific Coast Wholesalers' Association et al., appellees.

Per Curiam.

The appellee, Pacific Coast Wholesalers' Association, was formed by seven Los Angeles auto parts dealers in 1935; incorporated under California law as a nonprofit corporation in 1943; and had forty-one members and issued freight bills exceeding one million dollars in annual value in 1945. The issue presented is whether this association, with respect to the shipments here involved, is subject to regulation by the Interstate Commerce Commission as a freight forwarder or stands in exempt status under § 402 (c) (1) of the Interstate Commerce Act. This section reads as follows:

> "The provisions of this part shall not be construed to apply (1) to the operations of a shipper, or a group or association of shippers, in consolidating or distributing freight for themselves or for the members thereof, on a nonprofit basis, for the purpose of securing the benefits of carload, truckload, or other volume rates, . . . ." [1]

The Interstate Commerce Commission, in 1945, considered the status of the appellee in its first decision in this matter. At that time, it concluded that "It has been established in this proceeding that the traffic handled is for members of the association, that the association was founded and has been operated, in good faith, for the purpose of effecting savings in freight charges for its members by securing the benefits of carload, truckload, or other volume rates, and that the association is operated on a nonprofit basis. These are operations of the character contemplated by the exemption referred to, and may be continued without obtaining authority therefor from this Commission." 264 I. C. C. 134, 142.

In 1947, the Commission reversed its position as it applied to shipments on an f. o. b. destination or delivered

---

[1] 56 Stat. 285, 49 U. S. C. § 1002 (c) (1).

price basis. 269 I. C. C. 504. It left standing the exemption of the association from regulation by the Commission in respect of shipments on an f. o. b. origin basis. It was stated that the legal obligation to pay the freight charges rested on the nonmember consignor, who paid the full less-than-carload rate, rather than on the consignee association member. It was therefore held that the difference between the rate paid by the nonmember and the carload transportation cost was profit to the association, and that the association was holding out its service to the general public. In this view, the Commission concluded that appellee was not qualified for the exempt status on f. o. b. destination or delivered price shipments.

A decree of the three-judge district court set aside the Commission's order as without rational basis. 81 F. Supp. 991. The court considered as decisive that no shipments by the association were ever undertaken except at the behest and for the benefit of a member. Looking to the agency between member and association, rather than that between buyer and seller, the court saw no reasonable ground for ruling that the association was on a profit basis, or that it was holding its service out to the general public. We agree.

There is nothing in the language of the Act or the legislative history to suggest that Congress intended the exemption to turn on the type of shipment which was involved, whether f. o. b. origin or f. o. b. destination (delivered price). On the contrary, it is clear that the nature of the relationship between the members and the group was thought to be determinative. Under that test, the valid claim of the association to the statutory exemption is established by the original Commission decision. The judgment below is

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.