**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff,**

v.

**CONTINENTAL SHIPPERS ASSOCIATION, INC. et al., Defendant.**

**No. 74 CV 517–W–1.**

United States District Court,
W. D. Missouri, W. D.

March 6, 1980.

Charles E. Patterson, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff.

Daniel S. Linhardt, Interstate Commerce Comm., Washington, D.C., Ronald N. Cobert, American Institute for Shippers Associations, Inc., Washington, D.C., for amicus curiae.

James E. Kelley, Smith, Gill, Fisher & Butts, Kansas City, Mo., William P. Whitaker, Veselich, Schulz & Whitaker, Kansas City, Mo., R. Frederick Walters, Linde,

Thomson, Fairchild, Langworthy & Korn, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

### JOHN W. OLIVER, Chief Judge.

█ In this case the plaintiff carrier, Southern Pacific, asserts claims for unpaid freight charges against certain shipper members of a defunct incorporated shipper's association (Continental Shippers Association) which declared bankruptcy in 1973 and now has no assets to satisfy the carrier's claims. In January, 1976 this Court entered a judgment for defendants based on the parties' contract for payment of the freight charges, the bill of lading, which specified that the incorporated association as consignor would be liable for payment. See this Court's order of January 21, 1976 and *Louisville & Nashville Railroad Company v. Central Iron and Coal Co.*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924). Subsequently, that judgment was vacated to allow the parties to brief the issue of whether the shipper member might be ultimately liable to the carrier under an agency theory in the circumstances present in this case. The parties filed a joint stipulation of facts March 23, 1979 and have now completed all briefing on this question. The sole issue for determination by this Court is whether certain shipper members of the exempt incorporated shipper association here, are liable to the carrier as principals for freight charges for the movement of their own goods when the incorporated association to which they belonged fails to pay. Jurisdiction is proper under 28 U.S.C. § 1337.

Though the question of a member's liability based on beneficial ownership alone is again raised, the Court will not discuss that question. As we note in our opinion of January 21, 1976 the mere reference to beneficial ownership on the bill of lading does not in and of itself change the contractual imposition of liability evidenced by the bill of lading. (See this Court's order of January 21, 1976 and the discussion therein.) We direct our attention, therefore, only to the question of whether an agency relationship existed between the members and Continental.

It is undisputed that Continental operated as an exempt shippers association pursuant to 49 U.S.C. § 1002(c), now 49 U.S.C. § 10562(3). [Stipulation of Fact No. 4]. Continental was a not-for-profit corporation whose only function was to consolidate and distribute freight for its shipper members to gain the benefits of volume shipping rates.

Continental contracted with Traffic Management Systems, Inc., [hereinafter T.M.S.] "to provide daily management of the affairs of Continental." [Management Agreement]. T.M.S. was to select the general manager subject to the approval of Continental. As a practical matter, the general manager, Mr. Peters, was clearly selected from the inception of Continental and consulted with the board in formalizing Continental's organization and recruiting members. [See Answers to Interrogatories, Deposition of Mr. Peters, and briefs filed by the parties.]

Both plaintiff and amicus, the Interstate Commerce Commission [hereinafter ICC] contend first that any shipper member of a bona fide exempt shippers organization is *per se* a principal and his organization his agent.

They base this contention on the inherent relationship which must exist between a member and a shipper's association to entitle the association to be exempt from regulation under the Interstate Commerce Act. Alternatively plaintiff contends that an agency relationship existed under the facts, even assuming the Court holds there is no basis for a finding of agency *per se*.

We first consider the contention that a shipper member is by operation of law a principal and his organized group, whatever its technical form, his agent. Plaintiff and the ICC rely on a long string of cases beginning with *United States v. Pacific Coast Wholesalers*, 338 U.S. 689, 70 S.Ct. 411, 94 L.Ed. 474 (1950), to support their contention that an agency relationship must be implied as a matter of law. In *Pacific Coast Wholesalers*, the Court stated, after reviewing the exemptive language in the Act and the legislative history, that "It is clear that the nature of the relationship between the

members and the group was thought to be determinative." (*Pacific, supra* at 691, 70 S.Ct. at 413).

■ While *Pacific Coast* and subsequent cases clearly indicate that the proper focus in determining the *exempt status* of a shippers association is the nature of the relationship between the shipper and the organization which consolidates the shipments for transport, the cases do not support the proposition that an agency relationship exists wherever the *right* to operate on an exempt basis is claimed. In each of the cases cited independent findings of fact which established an agency relationship were made either initially by the Court or by the Commission. Nothing in these cases serves to contradict the general rule that a determination of agency must be based on the individual facts and circumstances of the case at bar. *Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1343 (8th Cir. 1976).

■ An agency is the fiduciary relation which results from the manifestation of consent by one person that the other shall act on his behalf and subject to his control, and consent by the other to so act. *Northern, supra*, at 1343, quoting Restatement (2d) of Agency sec. 1 (1958); accord *Leidy v. Taliaferro*, 260 S.W.2d 504, 505 (Mo.1953).

Despite the stipulation of all parties that Continental operated at all relevant times herein as an exempt association, several defendants contend that, in fact, Continental was an independent contractor under the direction and control of Jerry Peters, its *de facto* general manager, and that he bore the risk of loss of the corporation.

■ An independent contractor is one who contracts to do something for another, but is not controlled by the other or subject to the other's right to control with respect to his physical conduct in performing the contracted service. *Listerman v. Day and Night Plumbing*, Mo.App., 384 S.W.2d 111, 114 (1964).

■ A finding of the right to and/or the exercise of control is one essential to a determination of the existence of an agency relationship between the shipper member and the association both under general principles of agency law and under the test applied by the Interstate Commerce Commission to determine if a shippers association qualifies for an exemption (*See Atlantic Shippers Assn.*, 322 ICC 273 (1969). If the facts of a particular case establish that an agency exists, the parties may not negate its existence by representing that it is something else. *McGraw, supra*, footnote 7 at 1343, citing *Board of Trade v. Hammond Elevator Company*, 198 U.S. 424, 437–38, 441, 25 S.Ct. 740–43, 744, 49 L.Ed. 1111 (1905).

There is no indication in the record before us here that any prior factual determination of entitlement to exemption was made by the ICC with respect to Continental. We must, therefore, consider the question of whether the facts in this case establish that an actual agency relation existed between each member and the Continental Shippers Association.

First, each shipment subject to a claim by Southern Pacific in this case was made at the behest of a shipper member defendant. The member prepared a bill of lading for Continental. Continental, acting through Mr. Peters, prepared a second bill of lading which consolidated the various shipment requests in order to obtain the advantages of volume rates. No shipments were ever made except at the behest and for the benefit of a member (Deposition of Mr. Peters, p. 46, Stipulation of fact, By-laws of Consolidated Shippers Association). Each shipper exerted individual control over when and if his goods were shipped. If the association could not fulfill the shipper's direction the shipment was not routed through the association (Deposition of Jerry Peters, p. 60).[1] Continental followed the instructions of the member as set out in the member's bill of

---

1. Several defendants have objected to the use of Mr. Peters' deposition as evidence in this case on the grounds that it is self-serving. Defendants were represented by counsel when the deposition was taken and had the opportunity to cross examine Mr. Peters. F.R.C.P. 56 al-

lows the use of depositions as evidence in dispositions by summary judgment. See Moore's Federal Practice §§ 56.11[4], 56.15[5], 56.22[1], and cases cited therein. As a general rule the extrajudicial statements of an alleged agent may not be used to establish the fact of or the

lading or otherwise communicated to the extent instructions were so given. [Stipulation of Fact No. 80].

With respect to Continental's general management, the following factors must also be considered. The Board of Directors authorized all checks. The Board contracted with Traffic Management Systems to perform the daily activities of the corporation. Mr. Peters, president of Traffic Management, in essence, performed the contracted services. He consolidated the shipments and made the routing decisions to achieve the cheapest transportation rates. But this fact, even when coupled with payment to T.M.S. on a percentage of revenue basis, does not establish that Continental was an independent contractor.

Only a few of the cases cited by the parties or found by the Court in its independent research discuss in detail the factual distinctions in management which form the basis for the court's ultimate conclusion that one organization was functioning as an independent contractor and another as a dependent agent of a shipper. In all of these cases the issue before the Court was if the association was entitled to operate exempt from regulation or was conducting operations as an illegal freight forwarder.

Most factors considered by the courts related to the degree of control exercised by the members. For instance, who had authority to sign checks; how frequently were financial reports submitted to the board and to the members; who actually selected the Board; who actually supervised daily affairs. *Freight Forwarders Inst. v. United States*, 263 F.Supp. 460 (S.D.N.Y.1967).

Some of the factors related to the division of burdens or of the risks of loss between the members and the corporation's management. The essential risks of operation must be borne by the members. The essential risk in such an operation is basically that any savings on volume rates will be negated by uneconomical operating costs (*Freight Forwarders, supra* ) or that freight rates will increase. *See Columbia Shippers*

*and Receivers Assn., Inc. v. United States*, 301 F.Supp. 310 (D.Delaware 1969). All other risks are readily insurable. The court in *Columbia* also found the issue of control inseparably related to risk, and stated that retention of the "*right* [emphasis added] to control and dominate" the operations was evidence of retention of the risks of operation.

The argument, similar to that advanced by defendant here, that the risks of loss were borne by the "general agent" in charge of conducting daily affairs because he was compensated on the basis of the percentage of freight volume handled and assumed some financial responsibilities for the corporation, i. e., he provided office space, paid for some supplies, and paid an insurance fee for each shipment was rejected by the court in both *Columbia* and *Freight Forwarders, supra*. The fact that the "agent" bore the risks of these variable costs did not establish that he bore the essential risks of the operation. The court in *Columbia* also rejected the argument that the corporate form of the association would insulate individual members from their responsibility for their own freight charges. (*Columbia, supra*, at fn. 18, p. 319). The court, though not faced with the issue of corporate v. member liability, indicated that a corporate shell with an intentionally minuscule capital position should not insulate the members from third parties. It seems clear in the case of Continental that the members retained the right to control disposition of their individual shipments and did so in fact. It is also clear that the members through their directors authorized all payments. The essential business of the corporation was controlled by the members.

The same factors considered relevant in *Columbia* to the determination of dependent v. independent agency are relevant here. Consolidated and T.M.S. bore the costs of rental space, corporate supplies, and insurance. They did not bear the risk of an unprofitable freight operation. The members instigated and were responsible for

---

scope of an agency. However, the sworn testimony of the alleged agent may be used either alone or in combination with other evidence to establish the existence of an agency. *Southwestern Bell Tel. Co. v. Roussin*, 534 S.W.2d 273, 277 (Mo.App.1976).

freight charges, and bore the risk that they would increase.

Amicus, the American Shippers Association, further contends that the term "agent" is loosely used in many court opinions dealing with the transportation industry to refer to independent contractors. While this may be true in some instances, in the cases cited here, it is clear that the courts relied on facts which established the requisite authority and control of principal and agent. The court in *Columbia* specified that the case concerned a *dependent* shipper's agent effectively controlled by the shipper membership, not an independent shipper's agent. *Columbia, supra*, at 322, 323.

In *C-Line Inc. v. United States*, 376 F.Supp. 1043 (D.R.I.1974), the court stated that both dependent and independent "agents" can control certain shipping functions (i. e., routing decisions, selection of carrier, etc.). The relevant distinction is in the exercise of control over transportation activities by the members. The fact of incorporation is a technical one, not in and of itself destroying the essential lack of distinction between the association and its membership. (Id. at 1050.)

█ It is implicit in all cases discussed that if association members are found in fact to exercise that degree of control required to entitle them to exemption from regulation pursuant to 49 U.S.C. § 10562(3), the result must be that the dependent relationship created is that of agent and principal with respect to each member's individual freight movements.

The facts in this case establish that Consolidated Shippers had actual authority to act as agent for a member, was controlled by the members, and did in fact act as their agent in arranging transport for individual shipments. As the District Court for the Southern District of New York stated in *Freight Consolidators, supra*, at 697, in which they quote with approval the language of the Commission in the first *Atlantic Shippers* case, 318 ICC 507 at 518, "Thus in all its operations in connection with the consolidation, transportation, and distribution of freight, the association must act solely at the request and under the direction, and for the account and benefit of its members, and as between the members and their association the former always act as principal and the latter as agent."

The by-laws of the corporation, its rules and regulations, and its contract for management of daily activities establish that it was organized as an authorized agent of each shipper member, that it bore no responsibility for freight charges, that it acted only as an agent in processing claims for loss and damage, that it acted only with respect to member's shipments according to their instructions, that it was controlled by a board made up of shipper members, and that supervisory authority was the responsibility of the directors.

█ The actual operation of the association conformed to its paper form. Though it hired an independent company, T.M.S., to manage its daily shipment consolidating and routing operations, the directors signed and approved all checks [Deposition of Jerry Peters p. 20], the membership composed the list from which independent cartage agents were selected, and the membership chose the directors. Though the membership had only annual meetings in which the financial condition of the corporation was reported to them, with respect to each of their freight shipments they prepared the bills of lading directing the corporation as to shipment. The corporation functioned only to consolidate and select a route to achieve the cheapest rate. The corporation never assumed responsibility for freight charges vis a vis a member even though its name as consignor appeared on the consolidated bill of lading. The railroad, even though it relied on Continental as consignor [Deposition for Jerry Peters p. 46], may look to the member principal for ultimate liability for freight charges when the agent, Consolidated, had actual authority to make the shipment.[2]

One defendant concedes that the association acts as an agent when it places a

---

2. Defendant's contention that Consolidated had no apparent authority is inapposite. The question of reliance on apparent authority never arises in a case in which the agent has actual authority to bind his principal.

member's shipment in commerce, but relies on the corporate form of the association here to protect the member from liability. The defendant attempts to analogize the shipper members of the corporation to shareholders and thus contends they should be insulated from liability for debts assumed by the corporation. The analogy must fail for two reasons. First, the debts (each member's own unpaid freight charges) are debts for which the corporation never assumed liability with respect to its members. Second, the members were not shareholders. The corporation was not a stock corporation. No rules of shareholder liability are applicable.

Finally defendant contends that it is inequitable to hold a member liable to the carrier when he has, as is stipulated by all parties here, already paid once to the incorporated association. Equity will not protect the member here. A principal is responsible for the acts of his agent. Between a principal and a third party, the principal must bear the burden when his agent fails to properly perform his duties.

Accordingly, it is

ORDERED (1) that the defendants, Breddo Food Products, Stuart Hall Co., Cramer Industries, Hanlon Chemical Co., Inc., Neevel Luggage Manufacturing Co., National Folding Carton & Tube Co., O'Sullivan Industries, Inc., Alton Boxboard Co., and Pioneer Cap Co., Inc., are each liable as principals of Consolidated Shippers Association to Southern Pacific Transportation Co., Inc. for unpaid freight charges on their own freight shipments. It is further

ORDERED (2) that the Clerk enter judgment for plaintiff against each defendant in accordance with the stipulation filed by the parties which specifies the amounts owed to Southern Pacific by each defendant for their respective freight shipments.