642 F.2d 236
 SOUTHERN PACIFIC TRANSPORTATION COMPANY, Appellee,
v.
CONTINENTAL SHIPPERS ASSOCIATION, INC., Breddo Food Products
Corporation, Stuart Hall Company, Inc., Hanlon Chemical
Company, Inc., Cramer Industries, Inc., Neevel Luggage
Manufacturing Company, National Folding Carton and Tube
Company, Conroy, Inc., d/b/a O'Sullivan Industries, Inc.,
Alton Box Board Company, Pioneer Cap Company, Appellants.
 No. 80-1264.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1980.
Decided Feb. 27, 1981.
 
 R. Frederick Walters and Arthur B. Federman, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for defendants-appellants Breddo Food Products Co. and Stuart Hall Co., Inc.
 William P. Whitaker, Veselich, Schulz, Whitaker & Bender, Kansas City, Mo., for defendants-appellants Hanlon Chemical Co., Inc., Cramer Industries, Inc., Neevel Luggage Mfg. Co., National Folding Carton and Tube Co., Conroy, Inc., d/b/a O'Sullivan Industries, Inc., and Alton Box Board Co.
 Ronald N. Cobert, argued, Robert L. Cope, Grove, Jaskiewicz, Gilliam & Cobert, Washington, D. C., for amicus curiae, American Institute for Shippers' Ass'ns, Inc.
 Michael L. Martin, Stanley M. Braverman, Daniel S. Linhardt, argued, ICC, Washington, D. C., for amicus curiae Interstate Commerce Commission.
 Charles E. Patterson, Roy Bash, argued, Dwight D. Sutherland, Jr., Phillip E. De La Torre, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellee Southern Pac. Transp. Co.
 Before HEANEY, ROSS and McMILLIAN, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 This appeal presents the issue of whether the shipper-members of a shippers association which is exempt from Interstate Commerce Commission (ICC) regulation[1] are individually liable to a common carrier for freight charges when the shippers association fails to pay those charges. In this case, Continental Shippers Association, Inc. (Continental) went bankrupt and plaintiff-appellee Southern Pacific Transportation Company (SP) did not receive payment for shipping certain goods for defendant-appellants, all of whom were Continental members. The district court[2] held that appellant shipper-members[3] were "each liable as principals" of the bankrupt Continental to SP for freight charges on their individual freight shipments. Southern Pac. Transp. Co. v. Continental Shippers Ass'n, Inc., 485 F.Supp. 1313, 1319 (W.D.Mo.1980). We affirm the district court's judgment.[4]
 
 
 2
 Continental operated as an exempt shippers association pursuant to 49 U.S.C.A. § 10562(3) (Supp.1980) and was a nonprofit corporation which functioned only to consolidate and distribute freight for its shipper-members.[5] Like all exempt shippers associations, its purpose was to gain the benefits of volume shipping rates for its shipper-members. Continental had approximately fifty-five shipper-members.
 
 
 3
 Continental had no employees of its own and its day-to-day operations were managed by Traffic Management Systems, Inc. (TMS). The contract between Continental and TMS obligated TMS to select a general manager to supervise daily business affairs, subject to Continental's approval. Jerry Peters served as TMS general manager during the period relevant to this appeal.[6]
 
 
 4
 Continental acted exclusively at its shipper-members' behest. To initiate a shipping transaction, a member prepared a bill of lading for Continental. Upon receipt of a shipper-member's goods and bill of lading, Continental (acting through TMS general manager Peters) prepared a second bill of lading that consolidated various shipment requests in order to obtain volume freight rates.[7] The district court found that each shipper-member exerted individual control over when and if its goods were shipped. Southern Pac. Transp. Co. v. Continental Shippers Ass'n, Inc., supra, 485 F.Supp. at 1316. If Continental was unable to fulfill a shipper-member's instructions, it did not attempt to make any shipping arrangements. Id. The district court found that Continental's corporate by-laws, its rules and regulations and its management contract with TMS established that Continental: (1) was organized as an authorized agent of each shipper-member; (2) bore no direct responsibility for freight charges even though its name as a cosigner appeared on the second consolidated bill of lading; (3) acted solely as the shipper-members' agent in processing claims for loss and damage; (4) processed shipments only upon a member's instruction; and (5) was controlled and supervised by a board of directors solely made up of shipper-member employees.[8] Id. at 1318.
 
 
 5
 The district court initially rejected SP and amicus curiae ICC's argument that the relationship between an exempt shippers association and its shipper-members is necessarily one of agency. Id. at 1316. The argument presented below and again before this Court is that each shipper-member is necessarily a principal of its agent, the exempt shippers association. The district court declined to adopt a per se agency rule and concluded that the question of whether an actual agency relationship exists between an exempt shippers association and its members must be determined on a case-by-case basis. Id. The court held, after an examination of the relevant circumstances, that an actual agency relationship existed between Continental and its shipper-members. Id. at 1318-1319. We agree.
 
 
 6
 "Agency" is the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1348 (8th Cir. 1980) (quoting Restatement (Second) of Agency § 1 (1958)). Agency is a legal concept that depends upon the existence of certain factual elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. Id. Finally, it is clear that a corporation may become an agent of an individual or of another corporation. Restatement (Second) of Agency § 14M (1958).
 
 
 7
 We hold that the district court correctly concluded that, on the facts of this case, the appellant shipper-members were principals of their agent Continental. Continental's shipping arrangements, as summarized earlier, were consummated by TMS solely upon the orders of individual shipper-members. The district court correctly found that Continental had actual authority to act as an agent for any of its members, it was controlled by its members and it did in fact act as its members' agent in arranging transportation for individual shipments. Accordingly, the court properly ordered the appellant shipper-members to pay SP the freight charges arising from their own shipments.[9] We find it unnecessary to decide whether, as a general matter, the shipper-members of any exempt shippers association are necessarily principals of their agent association.
 
 
 8
 Having found the appellants' other contentions unpersuasive, the district court's judgment is affirmed.[10]
 
 
 
 [1]
 See 49 U.S.C. § 10562(3) (Supp.1980) (formerly codified at 49 U.S.C. § 1002(c))
 
 
 [2]
 The Honorable John W. Oliver, United States District Judge for the Western District of Missouri
 
 
 [3]
 SP initially sued Continental and its shipper-members, but specifically sought recovery from the individual shipper-member appellants when it learned of Continental's bankrupt status
 The individual shipper-members held liable by the district court were: (1) Breddo Food Products; (2) Stuart Hall Company; (3) Cramer Industries; (4) Hanlon Chemical Company, Inc.; (5) Neevel Luggage Manufacturing Company; (6) National Folding Carton and Tube Company; (7) O'Sullivan Industries, Inc.; (8) Alton Boxboard Company; and (9) Pioneer Cap Company. These nine entities are the appellants in this Court along with amicus curiae American Institute for Shippers' Associations, Inc.
 
 
 [4]
 We note that the appellants contend that the district court made its decision upon "sketchy" factual stipulations. This assertion rings hollow because the appellants agreed to the stipulations below. Moreover, they had every opportunity to supplement the record for the district court's consideration. Our review of the stipulations and the entire record confirms that the district court's factual findings are not clearly erroneous. See Fed.R.Civ.P. 52(a)
 
 
 [5]
 We reject the appellants' attempt to escape their stipulation in the district court that Continental, in all relevant times, acted as a shippers association exempt from ICC regulation
 
 
 [6]
 The appellants maintain that a deposition by Mr. Peters was erroneously considered by the district court. The appellants' reply brief, however, places reliance on the Peters' deposition in support of the contention that Continental was an independent contractor rather than an agent. We conclude that Peters' deposition was properly considered by the district court
 
 
 [7]
 ICC regulations require exempt shippers associations to furnish the names of the property's beneficial owners (i. e., the shipper-members that own the shipped goods) to the freight carrier in the bill of lading or at least have a bill of lading incorporate by reference a document containing the names of the beneficial owners. 49 C.F.R. § 1320.1 (1979)
 
 
 [8]
 The district court recognized that TMS handled Continental's day-to-day operation, but also noted that: (1) members of Continental's board of directors signed and approved all checks; (2) Continental's members composed the list from which independent cartage agents were selected and chose the board of directors; (3) Continental's annual corporate meetings basically consisted of financial reporting to members; (4) members prepared bills of lading for their own shipments and directed Continental as to actual shipping arrangements; and (5) as a corporation, Continental functioned only to consolidate and select routes to achieve economic savings. Southern Pac. Transp. Co. v. Continental Shippers Ass'n, Inc., 485 F.Supp. 1313, 1318 (W.D.Mo.1980)
 
 
 [9]
 The district court also rejected the appellants' contentions that (1) Continental's corporate form protected the appellants from individual liability; and (2) it would be inequitable to require the appellants to pay SP its claimed freight charges because they previously paid those amounts directly to Continental
 We affirm the district court on both grounds. We especially find the appellants' heated cries of "double liability" unpersuasive because the shipper-members, as principals, were responsible when their agent Continental failed to pay SP. See, e. g., Restatement (Second) of Agency § 183, Comment a (1958). The appellants are liable for the unpaid freight charges even though they previously remitted those sums to Continental.
 
 
 [10]
 We reject the appellants' argument that affirmance of the district court's opinion will mean the total destruction of all exempt shippers associations in this country; these "doom" arguments are purely conjectural at this time. We agree with amicus curiae ICC's statement that far from damaging exempt shippers associations, affirmance will encourage "healthy participation" by shipper-members in the affairs of their exempt shippers association