**AMERICAN BROADCASTING COMPANIES, INC., Plaintiff,**

v.

**CLIMATE CONTROL CORPORATION, Defendant.**

**No. 80 C 940.**

United States District Court, N. D. Illinois, E. D.

Sept. 30, 1981.

Jayne W. Barnard, Jenner & Block, Chicago, Ill., for plaintiff.

Robert E. Burke, Park Ridge, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff American Broadcasting Companies, Inc. ("ABC" or "WLS–TV")[1] sues Climate Control Corporation ("Climate Control") to recover the cost of certain advertising time. Both parties have moved for summary judgment. For the reasons stated in this memorandum opinion and order both motions are denied.

### Questions as to Agency

Climate Control is a local distributor for a national air conditioning firm. In the spring of 1978 Climate Control (which had done virtually no television advertising) decided to run a commercial on local Chicago television stations. Because it understood media representatives would not deal directly with advertisers, so that it could not purchase air time itself, Climate Control secured the services of an advertising agency, Sander Rodkin/Hechtman/Glantz Advertising, Ltd. ("Sander Rodkin"). Sander Rodkin recommended both the ABC and CBS stations and June and July 1978 dates for running the commercials.

Sander Rodkin never discussed the terms of the billings with Climate Control except to say that Sander Rodkin would bill Climate Control, pay the media and receive a commission from the media. Sander Rodkin told Climate Control that was standard procedure in the advertising industry.

Unfortunately Sander Rodkin was in financial distress. Although it received full payment from Climate Control promptly after each billing, it was slow in honoring its billings from WLS–TV. Moreover it did not designate the checks it did remit to WLS–TV to reflect that they should be applied to the invoices covering Climate Control commercials (some checks designated other accounts, while others bore no designation at all).

Thus when Sander Rodkin entered into an assignment for the benefit of creditors on April 13, 1979 WLS–TV's accounts showed $13,175 still unpaid for television air time used for Climate Control commercials.[2] From Climate Control's point of view, however, it had paid for the time in full—its final payment of $15,000, designated as payment for WLS–TV air time, had been made to Sander Rodkin August 28, 1978.[3]

---

1. ABC does business locally under the name "WLS–TV," the call letters of the Chicago area television station it owns and operates. Though WLS–TV is thus not a legal entity, for convenience plaintiff will be referred to by that name interchangeably with "ABC."

2. WLS–TV's account receivable was maintained in the Sander Rodkin name, with the amount broken down by individual advertiser. When Sander Rodkin remitted payments without any advertiser designation (as happened during the period involved here) it was WLS–TV and not Sander Rodkin (and of course not the advertiser) who decided how the payment would be applied.

3. Except for one $85 item, the disparity in the figures arises from Sander Rodkin's commis-

It was not until December 1979 that Climate Control was notified ABC considered it liable for the unpaid balance, and on its refusal to pay this action followed.

ABC and Climate Control were never in communication as to purchase of the air time, which was accomplished by negotiations between representatives of Sander Rodkin and WLS–TV. Indeed Climate Control never saw the contract, which was WLS–TV's printed form filled in by WLS–TV. Although WLS–TV listed the "Advertiser" as "Climatrol, Inc." (sic), no employee of Climate Control negotiated or signed the contract. Instead the contract form, addressed by WLS–TV to Sander Rodkin as the buying agency, was accepted "for Agency and/or Advertiser" (again WLS–TV's form designation) by Debbie Wright, a Sander Rodkin employee.

Thus the first question involved in this action is whether Sander Rodkin was an agent for Climate Control with the power to bind it to a contract *to pay* for the purchase of advertising time.[4] If Sander Rodkin were indeed such an agent, Climate Control, as a disclosed principal, is bound by the contract to pay. But if Sander Rodkin were an independent contractor and not

Climate Control's agent for that purpose, WLS–TV has no remedy against Climate.[5]

Thus the undisputed facts must be sufficient to answer two questions if summary judgment is to be entered:

(1) Was Sander Rodkin Climate Control's agent?

(2) If there were an agency relationship, did it encompass the power to bind Climate Control to pay WLS–TV?

Viewed in those terms, most of the parties' arguments on this motion have been misdirected.[6]

Agency is a "voluntary relationship ... that ... cannot exist without the consent of both the principal and the agent." 1 I.L.P. Agency § 4. It is the principal who voluntarily empowers an agent to bind him to contracts with third parties. 1 I.L.P. Agency § 12. Thus the considerations relevant to determining whether Sander Rodkin was Climate Control's agent are factors relating to the relationship between Sander Rodkin and Climate Control, not between Sander Rodkin and WLS–TV.[7]

For example, the parties dispute at some length the effect of a clause in the WLS–TV contract that might be argued to im-

---

sion. WLS–TV's bills to advertising agencies reflected the full cost of air time, the 15% "agency commission" and the net amount due from the agency.

4. Neither party has addressed the significance if any of WLS–TV's misdesignation of the advertiser as "Climatrol, Inc." in the contract, nor have the parties dealt with other provisions of the contract (touched on later in this opinion) that appeared to raise questions as to whether Climate Control was designated as a contracting party in any case. Both parties are invited to do so when the case reaches the stage of disposition on the merits.

5. One short note about terminology is in order. There is no doubt in this case that Sander Rodkin was an independent contractor. That term is properly used in distinguishing the master-servant relationship, in which the employee is subject to the *physical* control of his employer. In such cases the master or principal is liable for the physical acts of his employee. Clearly Sander Rodkin was not subject to the physical control of Climate Control. But independent contractors may or may not be agents. And it is the question whether Sander Rodkin was an agent with power to bind Climate Con-

trol to make payment that will determine whether Climate Control is liable on a contract negotiated by Sander Rodkin. *See,* Restatement of the Law (Second) Agency §§ 1, 2, 14N; *Hoffman & Morton Co. v. American Insurance Co.,* 35 Ill.App.2d 97, 102–03, 181 N.E.2d 821, 823 (1st Dist. 1962).

6. ABC's arguments reach the issue of agency and stop. But this area of the law does not draw upon Gertrude Stein: It is simply not true that an agent is an agent is an agent. *Scope* of the claimed agency is all-important.

7. One potential exception to that proposition exists: the concept of "apparent authority." That notion rests essentially on estoppel rather than consent, for an apparent agent is a person who, though not actually empowered to act as an agent, appears so due to the actions of his principal. *See, Alterman v. Lydick,* 241 F.2d 50, 53 (7th Cir. 1957). Because it is an undisputed fact that Climate Control did not in any way communicate with WLS–TV, this case does not involve (and ABC has not claimed) apparent authority.

pose liability on each of Sander Rodkin and Climate Control. That language, wholly unknown as it was to Climate Control, cannot affect the relationship between Climate Control and Sander Rodkin. If Sander Rodkin were not authorized to bind Climate Control to pay, its signing of a dual liability contract would be outside its authority as agent and Climate Control would not be liable.

■ Two types of actual authority are possible: express and implied. Climate Control officials were admittedly unaware of the contracts signed by Sander Rodkin and never expressly authorized Sander Rodkin to bind Climate Control to make payment to any television station. Express authority, then, was clearly lacking.

However, "the relationship of agency does not depend on an express appointment and acceptance thereof, but it may be implied from the circumstances of the particular case...." 1 I.L.P. Agency § 13. Thus the case reduces to the question whether the actions taken by Climate Control *impliedly* empowered Sander Rodkin to bind Climate Control to pay the television station for time purchased.

■ Seen from that perspective it is plain that summary judgment cannot be granted either party. Questions of implied agency are rarely susceptible to summary judgment because such agency must be inferred from actions by a principal, and those actions seldom permit of a single inference. This case presents a typical example. While each party does not dispute the truth of the facts advanced by the other, conflicting inferences can be drawn from the identical set of facts. Because such conflicting inferences are possible, summary judgment is inappropriate. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

WLS–TV's form contract itself permits two possible interpretations. Its caption reads:

Television facilities contract between WLS–TV an owned television station of the American Broadcasting Company, a Division of American Broadcasting Companies, Inc. and Advertiser as represented below:

That statement, coupled with WLS–TV's insertion of "Climatrol, Inc." in the blank space opposite the word "Advertiser," might indicate that the contract was intended to be between WLS–TV and Climate Control (but see n.4).

But a closer reading of the contract reveals that an opposite inference is permissible. Paragraph (1) on the reverse side of the contract, which deals with payment, consistently refers to "the Agency and/or Advertiser...." Paragraph (1)(f) then states (emphasis added):

*If* this contract is between Company [WLS–TV] and an Advertiser, references to the "Agency" shall apply to the Advertiser, except that no agency commission will be allowed to Advertiser.

Unless it were contemplated that the contract *may* be between WLS–TV and someone *other than* an advertiser, there would of course be no occasion for the "if" clause—or for Paragraph 1(f) at all. That provision, coupled with the contract's consistent use of the "and/or" locution, certainly permits the inference that the contract may be between (1) WLS–TV and an advertising agency or (2) WLS–TV and an advertiser or (3) WLS–TV and both agency and advertiser. To precisely the same effect, on the face of the contract under the caption "For Agency and/or Advertiser" there are *two* lines for the signatures reflecting acceptance.

Because Paragraph 1 thus indicates that WLS–TV is willing to enter into a contract with *either* the agency or the advertiser or both, it may be inferred from the existence of two places for acceptance signatures that the contract is between WLS–TV and whatever entity or entities signs or sign the acceptance.[8] Here the contract was signed only by a Sander Rodkin employee, so it is

---

**8.** It must be remembered that the contract was signed on WLS–TV's standard form. Under familiar doctrine any possible ambiguities must be construed against WLS–TV.

possible to infer that the contract bound only Sander Rodkin.

■ Facts apart from the contract itself similarly look in two directions. ABC points to facts that might indicate the existence of an agent-principal relationship between Sander Rodkin and Climate Control (but see n.6):

(1) Sander Rodkin never purchased advertising time without first seeking approval from Climate Control.

(2) WLS–TV's claimed dual liability advertising contract (neither party considered the contract construction argument just discussed in this opinion) was widely publicized.[9]

(3) Climate Control had the ability to veto any action Sander Rodkin might have taken. Whether Climate Control actually exercised that power is irrelevant because it is the ability to control, whether exercised or unexercised, that indicates an agency relationship. *Reith v. General Telephone Co. of Illinois*, 22 Ill.App.3d 337, 339, 317 N.E.2d 369, 372 (5th Dist. 1974).

Climate Control counters with several facts weighing against the existence of an agency relationship (or an agency to bind Climate Control to pay):

(1) Sander Rodkin's recommendations approved by Climate Control were very general. They did not indicate the exact time or shows for which advertising time would be purchased. Sander Rodkin had complete discretion as to the details of purchasing advertising time.

(2) WLS–TV dealt only with Sander Rodkin. WLS–TV billed Sander Rodkin, which in turn billed Climate Control.

(3) Sander Rodkin received a commission from WLS–TV, not Climate Control.[10]

(4) Climate Control was unaware that Sander Rodkin was signing a contract that could in any way bind it to pay WLS–TV.

(5) WLS–TV maintained its account receivable in the Sander Rodkin name. Sander Rodkin's checks to WLS–TV were often used to cancel any debts that Sander Rodkin owed to WLS–TV.

(6) In the advertising industry the custom and practice is that the advertising agency is solely liable to the advertising medium.[11]

■ Only one conclusion is possible: The agency question in this case cannot be decided via summary judgment. Indeed the case relied on so heavily by both parties involved a remand for trial of a question very similar to that posed in this case. *Columbia Broadcasting System, Inc. v. Stokely Van Camp, Inc.*, 522 F.2d 369, 376–77, 379 (2d Cir. 1975).

As the Court stated in *Tansey v. Robinson*, 24 Ill.App.2d 227, 233–34, 164 N.E.2d 272, 275 (1st Dist. 1960):

[The agency question] depends upon the actual practice followed by the parties and, as a general rule, becomes a mixed question of law and fact to be submitted upon proper instructions to a jury. De-

9. However Climate Control denies any knowledge of the WLS–TV contract. As already indicated, it had previously done almost no television advertising.

10. WLS–TV contends that its invoices indicated what the amount of the commission should be but the actual commission was paid by Climate Control. Its own contract form belies that assertion, or at least permits the opposite inference. It lists the *gross* cost of the advertising time as the "price" and contains a box to fill in the percentage of agency commission (15%). If WLS–TV is right that its contract is with the advertiser not the agency, *it* may be viewed as providing the commission to the advertising agencies out of the "total

charges" it is entitled to receive from the advertiser. It cannot have it both ways. At worst the question involves an issue of disputed fact, for the evidence could be read as indicating that either WLS–TV or Climate Control compensated Sander Rodkin for the services it provided.

11. WLS–TV does not dispute the custom, indeed stating that it deliberately adopted its claimed dual-liability form contract to *change* that practice. Under the circumstances then WLS–TV is hard put to argue that authority to bind the advertiser to make payment can be *implied* from the mere selection of an ad agency.

termination of the question of whether the relationship of employer and employee, principal and agent, or owner and independent contractor exists depends upon such facts as the matter of hiring, the right to discharge, the manner and direction of servants, the right to terminate the relationship, and the character of the supervision of the work done.... Unless those facts clearly appear, the relationship cannot become purely a question of law.

### Estoppel

█ Climate Control contends in its cross-motion for summary judgment that (1) WLS–TV had knowledge of Sander Rodkin's shaky financial condition and (2) having failed to advise Climate Control of that fact, WLS–TV is estopped to demand payment from Climate Control. Once again the facts are simply not clear enough to permit summary judgment. Estoppel would require WLS–TV to have been aware, and to have failed to inform Climate Control, that Sander Rodkin would soon fold. On that score the facts are not yet clear.

Climate relies on documents reflecting that:

(1) WLS–TV was aware that Sander Rodkin was a "slow pay" agency; and

(2) WLS–TV was considering pulling Sander Rodkin's clients off the air if they did not erase a large debt.

While those facts certainly indicate WLS–TV had knowledge of Sander Rodkin's difficulties, it is quite possible that WLS–TV was entirely unaware those difficulties would soon lead to Sander Rodkin's demise. Conflicting inferences are again possible from the evidence, and summary judgment is inappropriate.

### Conclusion

Numerous issues of material fact remain unresolved. Neither party is entitled to entry of summary judgment. Both their motions are denied.