Paulette Thompson MASSEY, Appellant,

v.

EMERGENCY ASSISTANCE, INC. and City of Kansas City, Missouri, a Municipal Corporation, Appellees.

No. 83–1743.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 30, 1983.

Decided Jan. 11, 1984.

Charles S. Scott, Scott, Scott, Scott & Scott, Topeka, Kan., for appellant.

Richard N. Ward, City Atty., Ralph W. Blinston, Asst. City Atty., Kansas City, Mo., for appellee City of Kansas City, Mo.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

PER CURIAM.

Paulette Thompson Massey brought an action against the City of Kansas City, Missouri and Emergency Assistance, Inc. alleging sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.,* and 42 U.S.C. § 1983. Massey appeals from the district court's decision directing a verdict for appellees on the § 1983 claim and dismissing the Title VII claim for lack of subject matter jurisdiction.

The district court, in a lengthy examination of the facts, applied the test announced in *Baker v. Stuart Broadcasting Co.,* 560

F.2d 389 (8th Cir.1977), and concluded that, for purposes of the Title VII action, Kansas City and Emergency Assistance, Inc. could not be treated as a single entity or joint employer nor could Emergency Assistance be considered the City's agent. On the § 1983 claim, the court concluded there was no showing of any "policy or custom" on the part of the City which would make it liable as a municipality.[1] Since we discern no error of law and the findings of fact are not clearly erroneous, we affirm on the basis of the district court's opinion.

Affirmed. *See* Eighth Circuit Rule 14.

LAY, Chief Judge, dissenting.

I respectfully dissent. The issue is whether Emergency Assistance employed a sufficient number of persons for it to be considered an employer for purposes of Title VII. *See* 42 U.S.C. § 2000e(b) (fifteen employees required). The district court held that under the test of *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir. 1977), the City and Emergency Assistance should not be considered as a single entity for the purposes of Title VII. The court also stated that no principal-agent relationship existed between Emergency Assistance and CDA. I submit that the majority's approval of the district court's application of the *Baker* test is incorrect. Alternatively, I would hold that Emergency Assistance was the agent of the City of Kansas City and that the district court's finding to the contrary was clearly erroneous.

Emergency Assistance was a private, non-profit corporation created to provide emergency relief for the City's needy.

Emergency Assistance was under contract with a city agency, known as CDA, to carry out this program. CDA reimbursed Emergency Assistance for its expenditures, both administrative and distributional, from funds received by the City under the Model Cities Program ("Demonstration Cities and Metropolitan Development Act of 1966," 42 U.S.C. §§ 3301–3374 (1976 & Supp. V 1981)). Pursuant to this contract, Emergency Assistance was required to file with CDA a monthly report concerning Emergency Assistance's activities. At the outset of the program, and occasionally thereafter, the City or CDA gave training to Emergency Assistance employees on how to interview applicants and evaluate their requests.

Emergency Assistance was governed by a board of directors. The Mayor of the City designated the persons who would make up the Board of Directors.[2] In respect to employee relations, the HUD guidelines under which CDA acted were incorporated into the contract between CDA and Emergency Assistance. These guidelines required Emergency Assistance to submit job descriptions to CDA and to advertise with and request referrals from CDA. In addition, Emergency Assistance was obligated to report each month to CDA on employee status, notify CDA of any suspension or termination of personnel, and permit CDA to attempt conciliation with respect to employee disputes.

The district court found that the City had no control over Emergency Assistance except to the extent that Emergency Assistance was required to operate within its contractual guidelines. I find this analysis clearly erroneous.

---

1. Appellant voluntarily dismissed her § 1983 claim against Emergency Assistance, Inc. Thus, we are not confronted with the question whether for purposes of the fourteenth amendment Emergency Assistance's alleged mistreatment of Massey constituted "state action." *See McVarish v. Mid-Nebraska Com. Mental Health Center,* 696 F.2d 69 (8th Cir.1982) (dismissal of employee of community mental health center was state action for fourteenth amendment purposes). We, therefore, express no opinion as to whether Massey had a valid § 1983 cause of action against Emergency Assistance, Inc.

2. The district court stated that the Mayor's designation of Emergency Assistance's Board of Directors appeared largely an "exercise in formality." Evidently, the residents of an area to be served by Emergency Assistance would recommend persons for positions on the Board. However, the district court made no findings as to how many of the persons recommended by residents actually served on the Board or what percentage of the Board were recommended by this process.

First, I find the district court erroneously applied the *Baker* test. I think it clear such test is not applicable to a factual situation concerning governmental entities. *Baker* involved a Title VII action against two broadcasting companies. One company directly employed the plaintiff and the other company provided managerial services to the plaintiff's employer. Plaintiff contended that the two companies should be considered her joint employers. The district court found that the companies were completely separate and that, therefore, they should not be consolidated for Title VII purposes. This court held that the proper standard to be used was that created by the National Labor Relations Board (NLRB) in actions under the National Labor Relations Act. That test focuses on four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Baker,* 560 F.2d at 392.

While this test has been used by courts in determining common control between two private entities, many courts have been reluctant to employ this standard when a governmental subdivision is an alleged employer. *See, e.g., Trevino v. Celanese Corp.,* 701 F.2d 397, 404 n. 10 (5th Cir.1983) ("As articulated, the standard is not readily applicable to governmental subdivisions . . . ."); *Owens v. Rush,* 636 F.2d 283, 286 n. 2 (10th Cir.1980) (emphasis original) (the *Baker* test was "developed by the National Labor Relations Board to determine whether consolidation of separate *private* corporations is proper."); *cf. Rogero v. Noone,* 704 F.2d 518, 521 n. 5 (11th Cir.1983) ("We do not question that a sheriff or a tax collector can be an agent of the governing authority of the political subdivision that employs him . . . .").

Factors such as "common ownership or financial control" and "centralized control of labor relations" are not relevant in analyzing the contractual relation of a town or county to a company or individual. There is no notion of "ownership" or "financial control" of a business by a city or county as there is with a subsidiary and its parent corporation. A city does not own stock in the companies with which it works. Similarly, a city does not bargain with and give benefits to the employees, as a group, of all the entities the city contracts with to carry out its municipal functions. The test of *Baker* is appropriate for determining joint control between private companies; it is not relevant to the situation presented in this case.

The test that is appropriate is a basic agency analysis. The district court's inquiry should have centered on whether the City exerts a degree of control over Emergency Assistance such that Emergency Assistance should be considered the agent of the City. The district court focused on the *Baker* test, and did not explicitly analyze the relevant facts under an agency relationship. In *Southern Pacific Transportation Co. v. Continental Shippers Association, Inc.,* 642 F.2d 236 (8th Cir.1981), we observed:

> Agency is a legal concept that depends upon the existence of certain factual elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking.

*Id.* at 238.

Under this analysis, I think the facts, as found by the district court, require this court to hold that an agency relationship between Emergency Assistance and the City existed. As found by the district court, Emergency Assistance was created to act for the City. The contractual relationship of Emergency Assistance and the City (acting through CDA) manifests both the City's intent that Emergency Assistance act for it and Emergency Assistance's "acceptance of the undertaking." The district court's findings provide abundant evidence of the third factor—an understanding between the parties that the principal is to be in control. A persuasive indicium of this control is the Mayor's power to appoint the Board of Directors of Emergency Assistance. Other indicia of the agency relation-

ship are the requirement that Emergency Assistance file monthly reports with CDA describing its activities and *the basic requirement that CDA be involved in virtually every important phase of Emergency Assistance's employment practices.*

I would reverse and remand the case to the district court with directions that Emergency Assistance be considered an employer under Title VII.