**CENTRAL STATES TRUCKING COMPANY, Plaintiff–Appellee,**

v.

**J.R. SIMPLOT COMPANY, Defendant–Appellant.**

No. 91–2272.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1992.

Decided June 11, 1992.

As Amended June 11, 1992.

Rehearing and Rehearing En Banc Denied Sept. 14, 1992.

Joel H. Steiner (argued), Paul A. Gajewski, Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for plaintiff-appellee.

Steven H. Hoeft (argued), Cathy H. McNeil, Mary B. Tribby, McDermott, Will & Emery, Chicago, Ill., for defendant-appellant.

Before KANNE, Circuit Judge, WOOD, Jr., Senior Circuit Judge, and SHARP, Chief District Judge.[*]

KANNE, Circuit Judge.

Central States Trucking Company ("Central States"), an interstate common freight carrier, brought this collection action pursuant to the Interstate Commerce Act, 49 U.S.C. § 1, *et seq.*, against J.R. Simplot Company ("Simplot") for shipping charges related to Simplot's freight. Simplot, which is in the frozen food business, was a member of the Perishable Shippers Association ("PSA"), a not-for-profit shippers' association, before PSA became insolvent.[1] PSA was able to obtain favorable shipping rates with common carries for its members by pooling its members' freight into larger shipments. PSA would contract with a common carrier, pay the freight charges for each shipment, and then charge back the amounts to the member whose freight had been shipped.

When it became insolvent, PSA owed Central States $249,962.55 in freight charges due for shipments by Central States of Simplot's freight; however, Simplot had paid PSA for the movement of freight represented by those charges. Therefore, the issue before the district court was whether Simplot could be held individually liable for the freight charges PSA owed to Central States. After concluding that an agency relationship existed between Simplot and PSA, the district court entered judgment in favor of Central States and against Simplot for the amount owing plus costs, 765 F.Supp. 931 (N.D.Ill. 1991). Simplot appeals and we affirm.

---

[*] The Honorable Allen Sharp, Chief District Judge for the Northern District of Indiana, is sitting by designation.

1. PSA was formed pursuant to 49 U.S.C. § 1002(c) (recodified as 49 U.S.C. § 10562(3)).

The parties waived their right to trial and stipulated to have the district judge enter judgment based on the pleadings, exhibits, deposition transcripts and affidavits. They agree that the material facts underlying this case are undisputed. Therefore, the district judge had to determine whether the facts established that PSA had acted as Simplot's agent in hiring Central States. "Although [agency] is a legal concept, whether particular 'facts' show [an agency relationship existed] is itself a 'fact' for purposes of separating the [district] judge's function from our own." *Mucha v. King*, 792 F.2d 602, 605 (7th Cir.1986) (involving the "fact" of possession). "Facts of this sort, which are found by applying a legal standard to a descriptive or historical narrative, are governed by the clearly-erroneous rule." *Id.;* FED. R.CIV.PRO. 52(a). *See Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989) (deferential review should be used for fact-intensive disputes, including the application of legal rules to facts). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation omitted).

■ As the district court noted, this case presents an issue of first impression in this circuit: whether a member of a not-for-profit shippers' association is individually liable for freight charges to a common carrier where the association, which contracted with that carrier and which has already received payment from the member, becomes insolvent before paying the carrier. Accordingly, the district court relied on the Eighth Circuit's analysis of this issue in *Southern Pacific Transp. Co. v. Continental Shippers Ass'n*, 642 F.2d 236 (8th Cir.1981) to find Simplot liable. *See also Metro Shippers, Inc. v. Life Savers, Inc.*, 509 F.Supp. 606 (D.N.J.1980) (applying a *per se* rule of agency for liability of an association member for charges on its shipments made through the association).

In *Southern Pacific*, the Eighth Circuit held that a shippers' association was the agent of its members and therefore the members were individually liable for freight charges corresponding to their freight shipments that the association failed to pay after it became bankrupt. 642 F.2d at 238. The court defined "agency" as "the fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id.* This definition has been adopted by our court. *See United States v. Feldman*, 825 F.2d 124, 129 (7th Cir.1987).

Like PSA, the Continental Shippers Association ("Continental") in *Southern Pacific* was a not-for-profit shippers' association which functioned to consolidate and distribute freight for its shipper members to gain the benefits of volume shipping rates. 642 F.2d at 237. Similarly, Continental had contracted with a management company to manage its day-to-day operations. *Id.* In addition, each member controlled when and if its goods were shipped through the association, and the association followed the instructions for handling freight as set out in the member's bill of lading. *Id.* Continental's by-laws provided that it (1) bore no direct responsibility for the members' freight charges; (2) acted as the members' agent in processing claims for loss and damage; (3) processed shipments only upon a member's instruction; (4) was controlled and supervised by a board of directors made up of the members' employees; and (5) was organized as an authorized agent of each member. *See id.* at 238.

■ In comparing *Southern Pacific* with this case, the district court concluded that the only difference was that PSA's by-laws did not expressly establish that it was the actual agent for its members. However, an agency relationship does not necessarily depend on an express appointment and acceptance thereof, but may be implied from the circumstances of the particular case. *American Broadcasting Cos. v. Climate Control Corp.*, 524 F.Supp. 1014, 1017 (N.D.Ill.1981). In addition to the sim-

ilarities of this case with *Southern Pacific* as noted above, Simplot's shipment of freight through PSA to receive favorable shipping rates necessarily authorized PSA to hire a carrier in its behalf to ship its freight. *See Metro Shippers,* 509 F.Supp. at 611.[2]

Simplot argues that the district court ignored other facts which indicated that an agency relationship existed in *Southern Pacific,* but which are not present here. Specifically, Simplot asserts that PSA's members did not control the association's day-to-day operations, i.e., the signing and approval of checks and the selection of carriers, *see Southern Pacific,* 642 F.2d at 238 n. 8, that PSA's business was not exclusive to its members, and that PSA's by-laws stated that the members would not be liable for PSA's debts.

We agree with Central States' assertion that the members' ability to control PSA's day-to-day operations is determinative, rather than the extent to which the members exercised that control. *See Climate Control,* 524 F.Supp. at 1018 (actual exercise of control is irrelevant because ability to control indicates agency relationship); *Metro Shippers,* 509 F.Supp. at 613 (members had the authority to exercise full supervision and control over the association and cannot complain if they are held responsible to a third party for charges on their own freight); *Southern Pacific Trans. Co. v. Continental Shippers Ass'n,* 485 F.Supp. 1313, 1316 (W.D.Mo.1980) (right to and/or the exercise of control is essential to determination of existence of agency relationship between shipper member and association), *aff'd,* 642 F.2d 236 (8th Cir.1981).

Several facts indicate that PSA's members had the ability to control the association: PSA's by-laws provided its Board of Directors with charge of its affairs and authority to act for it; PSA's Board was made up of representatives of its members; an officer of Simplot was a member of the Board during the relevant time period; the Board held meetings to set policy for the association and receive information from the management company; and the Board selected the management company to oversee the association's day-to-day operations and to choose carriers and controlled who had the authority to sign checks written on PSA's account. It is clear that the members generally controlled PSA's operations.

Simplot's reliance on *Strachan Shipping Co. v. Dresser Industries, Inc.,* 701 F.2d 483 (5th Cir.1983) and *Farrell Lines, Inc. v. Titan Industrial Corp.,* 306 F.Supp. 1348 (S.D.N.Y.), *aff'd,* 419 F.2d 835 (2d Cir.1969), *cert. denied,* 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970) is misplaced. These cases involved freight forwarders, formed and licensed under different statutory criteria than a not-for-profit shippers' association. *See Metro Shippers,* 509 F.Supp. at 607. In *Strachan,* the Fifth Circuit found that the freight forwarder was an independent contractor who performed services beneficial to both the shipper and the carrier. 701 F.2d at 487. In *Farrell,* the district court determined that the freight forwarder was the *carrier's* agent. 306 F.Supp. at 1349. In that case, the forwarder made preparations to ship freight without direction or instruction from the shipper, prepared the bills of lading for the carrier's signature, and was paid for these services by the carrier. In both cases, neither the shipper nor the carrier had any substantial control over the freight forwarder's performance. As we have found, PSA's members had the ability to control the operations of PSA; therefore, *Strachan* and *Farrell* are distinguishable.

Simplot alleges that PSA's business was not exclusive to its members. Central States acknowledges that PSA leased its excess or empty westbound trailers to nonmembers to avoid having to pay to reposition them for subsequent shipments. Al-

---

**2.** PSA's members were free to direct PSA to ship their freight by a variety of methods, i.e., door-to-door or ramp-to-ramp. When a member chose door-to-door service, it had the right to select the carrier. Simplot usually chose door-to-door service and allowed PSA to choose a carrier. Simplot prepared its own bills of lading when it delivered freight to PSA, and PSA followed the instructions set forth on the bills of lading.

though PSA also provided other transportation services to non-members, the shipping rates were higher for non-members than for members. Therefore, PSA exclusively provided favorable shipping rates to its members.

Simplot correctly asserts that it is not liable for PSA's debts. The association's Articles of Incorporation stated that the members were not liable for its debts. However, PSA's by-laws provided that "... neither shall the members incur any liability for the debts or obligations of [PSA] by reason of such membership *other than charges accruing on shipments handled for the account of the member,* or for membership fees and dues" (emphasis added). Simplot apparently contends that its liability for freight charges ran only to PSA, that it paid all charges to PSA, and therefore the amount owing to Central States was *PSA's* debt. We agree with the reasoning in *Metro Shippers,* 509 F.Supp. at 610, that this is not a matter of imposing liability on a member for corporate obligations. "It is a matter of holding the member responsible for its own shipments of its own freight handled on the member's account and for the member's benefit by the association...." *Id.*[3] And, although Simplot paid PSA for its freight charges, "[e]quity will not protect the member here. A principal is responsible for the acts of his agent. Between a principal and a third party, the principal must bear the burden when his agent fails to properly perform his duties." *Southern Pacific,* 485 F.Supp. at 1319. *See Metro Shippers,* 509 F.Supp. at 614 (shipper must carry risk of loss if association, as agent, misapplies funds that shipper paid association for freight charges). *See also Strachan,* 701 F.2d at 490 (shipper was forced to make double payment where the freight forwarder, chosen by the shipper, failed to remit payment

to the carrier); *accord Farrell,* 306 F.Supp. at 1351 (shipper was not responsible for the freight forwarder's failure to pay the carrier where the carrier dealt with freight forwarder as the shipper in fact).[4]

▆ Alternatively, Simplot argues that Central States was estopped from pursing its claim because it continued to do business with PSA after it became aware of PSA's financial difficulties. An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to its detriment on that representation. *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Black v. TIC Invest. Corp.,* 900 F.2d 112, 115 (7th Cir.1990). A party's conduct may also mislead another and cause detrimental reliance. *See Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980).

In rejecting Simplot's argument, the district court found that Simplot failed to allege that Central States made any misrepresentation on which it relied to its detriment. Prior to the time when PSA became insolvent, Central States allowed PSA to make payments over time because of a cash flow problem. The reason for this, Central States asserts, was the desire to avoid losing PSA as a client. The district court held that Central States' continued business with PSA, by itself, was not a sufficient misrepresentation for estoppel. We agree. There is no evidence that Simplot changed its position detrimentally in reliance on Central States' extension of credit to PSA or delay in collecting the freight charges. Considering that an officer of Simplot was a member of the Board of PSA, Simplot should have been aware of

---

**3.** *Wald v. Chicago Shippers Ass'n,* 175 Ill.App.3d 607, 125 Ill.Dec. 62, 529 N.E.2d 1138, 1149 (1988) is not to the contrary. In *Wald,* association members had no personal liability where the association's by-laws provided "... neither shall the members incur any liability for the debts or obligations of [the association] by reason of such membership...." Central States seeks only to recover freight charges corre-

sponding to the shipment of Simplot's freight, which are not general obligations of PSA.

**4.** PSA always disclosed the shipper member's identity to Central States when negotiating shipping rates. Therefore, it should have been clear to Central States that PSA was not the "shipper in fact."

PSA's financial difficulties, which had begun several years prior. Simplot continued to ship its freight through the association, and began paying Central States directly for hauling PSA trailers carrying its freight immediately before PSA suspended its operations. Central States' extension of credit to PSA and delay in attempting to collect freight charges should not estop Central States from seeking to collect payment from Simplot. *See Southern Pacific Transportation Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982) (violation of Interstate Commerce Commission credit regulations and delay in collection of freight charges did not support a finding of estoppel).[5]

The judgment of the district court is AFFIRMED.

---

**5.** Simplot's reliance on *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56 (7th Cir.1971) is misplaced. In concluding that the carrier in that case was estopped from collecting payment for freight charges from the consignee, we found that the carrier had made a material misrepresentation regarding prepayment and that the consignee had detrimentally relied on that misrepresentation.